**Affirmed and Opinion filed May 10, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00371-CR

**STEPHEN HENRY HOPPER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 673236**

## OPINION

In this appeal from a conviction for aggravated sexual assault, the sole question presented is whether the State violated appellant's constitutional right to a speedy trial. The post-indictment delay was more than twenty years, and the vast majority of that delay was attributable to the State's official negligence. Appellant acquiesced in that delay, however, and he did not establish that he was actually prejudiced by the delay. After balancing these factors, we hold that there is no violation, and we affirm the trial court's judgment.

## BACKGROUND

Appellant was indicted on November 4, 1993, for a violent rape that allegedly occurred on August 7 of the same year. At the time of the indictment, the State was aware that appellant was no longer in Texas because the State had already filed requests for detainers in both California and Nebraska.[1]

The record does not reveal what ever happened in California. What is clear, however, is that appellant was eventually taken into custody in Nebraska, where he was convicted by a jury on one count of sexual assault and another count of robbery. The trial ended on April 11, 1995, with punishment decided by the court. Appellant was sentenced to fifty years' imprisonment without the possibility of parole on the sexual assault charge, and between twenty and sixty years' imprisonment with the possibility of parole on the robbery charge. The sentences were stacked, meaning appellant must complete his fifty-year term for sexual assault before he can begin serving his sentence for robbery.

On April 20, 1995, shortly after the Nebraska trial was over, the State filed another request for a detainer. Nebraska acknowledged this request by a written letter mailed roughly two weeks later, confirming that the detainer had been filed. Nebraska also advised the State that no other jurisdiction had lodged a detainer against appellant, and that appellant's release date in Nebraska was tentatively scheduled for the year 2048.

On May 5, 1995, appellant was notified of the State's detainer. Appellant was also given a form advising him that he had a right to demand a final disposition of the charge pending against him in Texas. The form was prepared

---

[1] A detainer is "a legal order that requires a State to hold a currently imprisoned individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *See Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).

under the Interstate Agreement on Detainers ("IAD"), a compact that nearly every state in the union has joined, including Texas and Nebraska.[2] Appellant signed the form under the IAD, thereby acknowledging its receipt, but he did not request to be brought to trial in Texas.

After appellant was informed of his rights, the case lay dormant for more than eighteen years, until September 4, 2013, when the State initiated procedures under the IAD to have appellant transferred to Texas. Appellant was given an option in Nebraska to waive extradition, but he refused to cooperate. Appellant was eventually returned to Texas on October 19, 2013. Counsel was appointed to defend appellant, and on March 18, 2014, appellant moved to dismiss the indictment on speedy-trial grounds.

The court held two days of hearings in June of 2014, and three witnesses testified. The first witness was an IAD coordinator from the Nebraska Department of Corrections. This witness testified mainly about the forms in appellant's file. The second witness was an extradition administrator at the Harris County District Attorney's Office. She testified about the procedures taken by the State to return appellant to Texas. She also testified that the State knew that appellant had been imprisoned in Nebraska since 1995. The third witness was an investigator for the State, who testified that he reached out to the complainant eighteen months earlier, in January of 2013. The investigator testified that he had a conversation with the complainant over the phone, and during their discussion, the complainant expressed that she was both willing and eager to assist in the State's prosecution.

---

[2] The IAD is designed to facilitate the quick and orderly disposition of outstanding criminal charges, and in furtherance of that end, the IAD establishes a system of rights and procedures for both prisoners and member states. *See* Tex. Code Crim. Proc. art. 51.14.

Near the end of the hearing, the State represented that one other witness had been subpoenaed, but the witness, who was one of the State's investigating officers, had become unavailable for medical reasons. In lieu of the officer's testimony, the State made two stipulations with appellant's agreement. First, the State stipulated that evidence had been moved from the State's property room, and that certain unspecified evidence was still at the medical examiner's office. The State did not elaborate further on what this evidence was or whether it was material to the case. Second, the State stipulated that some other evidence had been lost or destroyed. This evidence included the rape kit, the complainant's clothing, a shirt allegedly belonging to appellant, and the original photospread.

Appellant never testified at the hearing. The trial court took the matter under advisement and denied the motion to dismiss on July 2, 2014. No findings of fact were entered into the record. On March 13, 2015, appellant pleaded guilty to the charged offense in exchange for a recommended sentence of thirty years' imprisonment. The trial court certified his right to appeal.

## ANALYSIS

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." *See* U.S. Const. amend. VI. This guarantee is written with such breadth that, if taken literally, it would forbid the government from delaying the trial of an accused for any reason at all. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). To qualify the literal sweep of the guarantee, the Supreme Court has determined that speedy-trial claims must be approached with a balancing test of four factors. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). Those factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.*

We review a trial court's ruling on a speedy-trial claim under a bifurcated standard. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). For factual questions, the standard is an abuse of discretion. *Id.* Because appellant lost in the trial court, we presume that any disputed fact issues were resolved in the State's favor, and we defer to the implied findings of fact that the record supports. *Id.* For legal questions, including the overall balancing of the four factors, the standard is de novo. *Id.*

***The Length of the Delay.*** This factor is actually a "double enquiry." *See Doggett*, 505 U.S. at 651. To trigger a speedy-trial analysis, the defendant must show that the interval between accusation and trial (or the time the defendant first demands a speedy trial) has crossed the threshold dividing ordinary from "presumptively prejudicial" delay. *Id.* at 651–52; *Zamorano*, 84 S.W.3d at 648. In this context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice. *See Doggett*, 505 U.S. at 652 n.1. Rather, it simply marks the point at which courts deem the delay unreasonable enough to trigger a full enquiry of the remaining factors. *Id.* Generally, a delay of eight months or longer is sufficient to cross that threshold. *See Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

Once the defendant meets this initial showing, the court must then consider the extent to which the delay has stretched beyond the threshold. *See Doggett*, 505 U.S. at 652. This latter enquiry is significant to the speedy-trial analysis because the presumption that pretrial delay has prejudiced the defendant intensifies over time. *Id.*

In this case, there is a span of more than twenty years between the time of the indictment and appellant's motion to dismiss, in which appellant first complained of his right to a speedy trial. That delay is more than enough to trigger

a full enquiry into the remaining factors. Given the length beyond the threshold, we conclude that this factor weighs heavily against the State. *See Gonzales v. State*, 435 S.W.3d 801, 809 (Tex. Crim. App. 2014) (six-year delay weighed heavily against the State).

***The Reason for the Delay.*** The State carries the burden of justifying its delay. *See Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). We assign different weights to different justifications. *See Barker*, 407 U.S. at 531. Valid reasons for delay are not weighed against the State. *See Doggett*, 505 U.S. at 656. These include such reasons as collecting witnesses against the defendant, opposing his pretrial motions, or, if he goes into hiding, exercising reasonable diligence in his pursuit. *Id.*

Bad-faith delays, on the other hand, are weighed heavily against the State. *Id*. These delays occur when the State intentionally holds back in its prosecution in order to gain an impermissible advantage at trial. *Id.* When that happens, relief for the defendant is "virtually automatic." *Id.* at 657.

Occupying the middle ground are more neutral reasons such as overcrowded courts and official negligence. *Id.* at 656–57. These reasons weigh against the State, although not as heavily as in the case of a bad-faith delay, because the ultimate responsibility for such circumstances rests with the State rather than the defendant. *See Barker*, 407 U.S. at 531.

For purposes of this factor, we can think of the State's delay as being composed of two distinct periods. The first period runs from the time of the indictment until the end of appellant's trial in Nebraska, a span of nearly one and a half years. The second period runs from the State's second request for a detainer in Nebraska until appellant's motion to dismiss in Texas, a span greater than eighteen and a half years.

The State has a valid reason for delay when a defendant is being actively prosecuted by another sovereign and, in the interests of comity, the State is waiting for that other prosecution to conclude. *See United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998). Therefore, we cannot weigh the first period of delay against the State because, during that period, appellant was either on the run or facing trial in Nebraska.

As for the second period, appellant argues that the State acted in bad faith because the State knew that he was incarcerated in Nebraska and available to be tried in Texas. Although the record amply supports the notion that the State knew of appellant's whereabouts, we cannot go so far as to say that this knowledge was sufficient, by itself, to demonstrate bad faith. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (refusing to presume that the State had delayed the trial in bad faith, even though the State knew that the defendant was currently serving a life sentence in a Texas prison). To support a finding of bad faith, the record must contain evidence that the State engaged in delay for an impermissible reason, such as to obtain an unfair tactical advantage. *See Doggett*, 505 U.S. at 656. Our record contains no such evidence, and in accordance with our standard of review, we cannot infer that the trial court made a finding of bad faith.

The State did not give any reason for the second period of delay. Normally, in the absence of an assigned reason, a court must hold that this factor weighs against the State, although not as heavily as if the delay were deliberate. *See Dragoo*, 96 S.W.3d at 314. The State urges us to apply a different rule—arguing that this factor should not weigh against the State at all—because the State filed a detainer in Nebraska, which in turn put appellant on notice that he could have demanded a trial in Texas. In the State's view, no period of delay should be weighed against the State once the defendant becomes aware of a detainer.

The State is incorrect.[3] A detainer does not absolve the State of its obligation to timely prosecute cases. The State's position is at odds with the decisions from the Supreme Court, which hold not only that the defendant has "no duty to bring himself to trial," but that, quite the opposite, this "primary burden" rests firmly with the State. *See Barker*, 407 U.S. at 527, 529; *see also Doggett*, 505 U.S. at 657 (holding that courts should not condone prolonged and unjustifiable delays because that would both "penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority").

The State's view is also inconsistent with the jurisprudence from the Court of Criminal Appeals. In *Dragoo*, the defendant was serving a life sentence in Texas while there was still another charge from Texas pending against him. *See Dragoo*, 96 S.W.3d at 311. Because the defendant was already in a Texas prison, the State had no reason to file a detainer under the IAD. The defendant did not insist on a speedy trial until after a delay of three and a half years, even though the defendant was aware of the pending charge, he was represented by counsel, and he could have demanded a trial much earlier. *Id.* at 314. The State did not offer any reason for the delay, and the Court of Criminal Appeals held that this factor weighed in favor of finding a speedy-trial violation. *Id.*

The facts of appellant's case are not more favorable to the State simply because the State filed a detainer. In both this case and *Dragoo*, the defendant was aware of the pending charge, and the State was aware of the defendant's exact

---

[3] During oral argument, the State suggested that it had no legal duty to bring appellant to trial under the authority of *Henson v. State*, 407 S.W.3d 764 (Tex. Crim. App. 2013). *Henson* does not stand for this remarkable proposition. That case determined that the defendant must preserve a speedy-trial claim in the trial court. *Id.* at 768 (holding that "the preservation requirements do apply to speedy-trial claims" and, thus, the defendant could not raise the claim for the first time on appeal). It is undisputed that appellant preserved his claim.

location. Also in both cases, the defendant could have demanded a speedy trial, by virtue of his knowledge of the pending charge, and the State could have compelled the defendant's presence for trial, by virtue of the defendant's status as a prisoner. We see no reason why our analysis should depart from *Dragoo*. Thus, when determining the weight assigned to this second factor under *Barker*, we hold that the defendant's knowledge of a detainer in no way excuses the State's delay in bringing the defendant to trial.

On this record, the only finding that the trial court could have made was that the State's reason for delay was its own official negligence, which lasted for more than eighteen and a half years. This factor weighs in favor of finding that the State violated appellant's right to a speedy trial, although not heavily.

***The Defendant's Assertion of His Right.*** The right to a speedy trial is unlike other rights enshrined in the Constitution because the deprivation of the right, in some instances, may actually work to the defendant's advantage. *See Barker*, 407 U.S. at 521. As the pretrial delay increases, witnesses can die, their memories can fade, or they can become unavailable for any number of other reasons. If these witnesses supported the State's theory of the case, then the prosecution will be impaired, and that impairment will work to the benefit of the defendant because the State carries the burden of proof. *Id.* For that reason, the Supreme Court has recognized that "[d]elay is not an uncommon defense tactic." *Id.*

Of course, delay can also prejudice the defendant. With the passage of time, the possibility grows that the defense may lose an alibi witness or access to other evidence with exculpatory value. *Id.* at 532. The more seriously that a defendant perceives a loss of this sort, the more likely he is to complain, and thus, the Supreme Court has held that the defendant bears "some responsibility to assert a speedy trial claim." *Id.* at 529.

9

The defendant's timely assertion of his right to a speedy trial is entitled to strong evidentiary weight when determining whether he was deprived of the right. *Id.* at 531–32. Although a tardy assertion will not be construed as a waiver of the right, a defendant's tardiness will make it difficult for him to prove that he was denied a speedy trial. *Id.* at 528, 532.

The record shows that appellant sat on his rights for more than eighteen and a half years, nearly the same amount of time as the State delayed in bringing appellant to trial. Appellant argues that this time should not be weighed against him because his only notice that he might need to assert his right was conveyed by the IAD form, which he signed when he was unrepresented by counsel and which, he claims, is full of legalese.

The IAD form is entitled, "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition." After this title, the form then states, in material part:

> Pursuant to the Agreement on Detainers, you are hereby informed that the following are the untried indictments, informations, or complaints against you concerning which the undersigned has knowledge, and the source and contents of each:
>
> Harris County Sheriff's Office, Houston, Texas
>
> Aggravated Sexual Assault
>
> You are hereby further advised that by the provisions of said Agreement you have the right to request the appropriate prosecuting officer of the jurisdiction in which any such indictment, information or complaint is pending and the appropriate court that a final disposition be made thereof. You shall then be brought to trial within 180 days, unless extended pursuant to provisions of the Agreement, after you have caused to be delivered to said prosecuting officer and said court written notice of the place of your imprisonment and your said request, together with a certificate of the custodial authority as more fully set forth in said Agreement.

Appellant has not cited to any case law holding that this language is legally insufficient to apprise a defendant of his right to demand a trial.[4] By its plain terms, the form advises a defendant that he has a right to request a final disposition of an indictment pending in another state. Although the form could be worded more simply, we are unwilling to say that the form is insufficient as a matter of law to provide notice, especially where such a holding could have ramifications in every jurisdiction that has adopted the IAD.

If appellant had testified at the hearing, the trial court could have considered whether he actually understood the form when he signed it, or whether he even appreciated the need to demand a trial because a charge was pending against him in Texas. But appellant did not testify at the hearing, nor did he produce any evidence that would support the claims he now makes on appeal. Because the record contains affirmative proof that appellant signed the form, the trial court was free to determine that appellant fully understood his rights, even without the benefit of representation. We must defer to that implied finding.

"The longer delay becomes, the more likely a defendant who wishes a speedy trial would be to take some action to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes." *Dragoo*, 96 S.W.3d at

---

[4] Appellant attacks "detainer paperwork" more generally in his brief, claiming that it is insufficient to provide notice. Appellant cites three cases for this point, but none of them supports his proposition, and each is factually distinguishable in any event. *See State v. Chavez*, No. 13-13-00413-CR, 2013 WL 6175232, at *1, *4 (Tex. App.—Corpus Christi Nov. 21, 2013, no pet.) (mem. op., not designated for publication) (the trial court made an express finding that the defendant had not been aware of the pending indictment, which had not been mentioned in the detainer); *State v. Howard*, No. 08-12-00206-CR, 2013 WL 3943121, at *3–4 (Tex. App.—El Paso July 31, 2013, no pet.) (mem. op., not designated for publication) (the record contained no evidence that the detainer was served on the defendant, and the record supported the trial court's implied finding that the defendant was unaware of the indictment); *Gutierrez v. State*, 728 S.W.2d 933, 935 (Tex. App.—Houston [14th Dist.] 1987, no pet.) (in an analysis under the Speedy Trial Act, rather than the Speedy Trial Clause, the State's filing of a detainer was insufficient to satisfy the due diligence required of the Act, which has since been repealed).

11

314. Appellant's delay in asserting his right to a speedy trial is more than eighteen and a half years. That inaction is strong evidence that appellant did not actually want a trial. Indeed, when the State initiated IAD procedures, appellant refused to sign a waiver of extradition, which provides further support that he was not interested in coming to trial. This factor weighs heavily against appellant.

*Prejudice to the Defendant.* We review the final factor in light of the interests that the right to a speedy trial was designed to protect. *See Barker*, 407 U.S. at 532. The Supreme Court has identified three such interests: to prevent oppressive pretrial incarceration, to minimize the defendant's anxiety and concern, and to limit the possibility that the defense will be impaired. *Id.* Of these, the last is the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Id.*

Appellant does not contend that the first two interests are at play. He focuses on the last interest instead. However, before he addresses how his defense was actually impaired, appellant contends that we should apply a presumption of prejudice, given the sheer length of the delay. On this point, appellant invokes *Doggett*, in which the Supreme Court recognized that the length of the delay may be so excessive in some cases that the delay "presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *See Doggett*, 505 U.S. at 655.

The Supreme Court also stated in *Doggett* that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.* Despite these statements, the Supreme Court did not hold, as appellant seems to suggest, that a defendant is relieved of his burden of showing prejudice whenever the delay is too long.

12

A presumption of prejudice that arises from extended delay does not end the prejudice enquiry.[5] Even with a presumption, the State may still prevail if the presumption of prejudice is "extenuated, as by the defendant's acquiescence" or "persuasively rebutted." *Id.* at 658. The rule that the presumption may be tempered by extenuating circumstances makes strong policy sense because, when the defendant acquiesces in the delay, the presumption should not apply or else the defendant will reap an undeserved windfall. *See, e.g.*, *Shaw v. State*, 117 S.W.3d 883, 890–91 (Tex. Crim. App. 2003); *Dragoo*, 96 S.W.3d at 315.

As we explained earlier, the third factor does not favor appellant and supports a finding of acquiescence. Appellant knew that a charge was pending against him and, despite having the opportunity to demand a resolution of that charge through the IAD, he sat on his rights for more than eighteen and a half years. We, therefore, conclude that even if we applied a presumption of prejudice in this case, the presumption is rebutted because of the trial court's implied finding that appellant acquiesced in the delay.

We now consider whether appellant was actually prejudiced. The defendant has the burden of demonstrating prejudice. *See Munoz v. State*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). If the defendant makes a prima facie showing, the burden then shifts to the State to prove that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.*

---

[5] We also note that a presumption of prejudice may arise when the first three *Barker* factors weigh in the defendant's favor. *See, e.g.*, *Doggett*, 505 U.S. at 657–58; *United States v. Molina-Solorio*, 577 F.3d 300, 305–07 (5th Cir. 2009); *United States v. Cardona*, 302 F.3d 494, 498–99 (5th Cir. 2002) (per curiam); *United States v. Bergfeld*, 280 F.3d 486, 489–90 (5th Cir. 2002); *Gonzales*, 435 S.W.3d at 809–12; *Zamorano*, 84 S.W.3d at 649–52; *State v. Wei*, 447 S.W.3d 549, 554–55 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *Orand v. State*, 254 S.W.3d 560, 570–71 (Tex. App.—Fort Worth 2008, pet. ref'd). We have already determined, however, that the third factor does not weigh in appellant's favor.

We assess prejudice according to a sliding scale. The longer the State's delay and the greater its official negligence, the less the defendant must show that he was actually prejudiced. *See Cantu*, 253 S.W.3d at 280–81. Because the delay in this case was both egregious and occasioned by the State's official negligence, appellant's burden was relatively small.

In his motion to dismiss, appellant offered a bare, single-sentence explanation of prejudice. He claimed that "exculpatory witnesses likely have become unavailable or have forgotten facts that would have proven beneficial to the Defendant." Appellant was in the best position to support this claim, but at the hearing on the motion to dismiss, he called no witnesses to explain who might have been available to testify for the defense but for the State's delay.[6]

At the end of the hearing, defense counsel presented an argument that appellant had suffered prejudice, but the argument did not refer to the claim made in the motion. Instead, counsel essentially made a summation of the State's stipulation of lost evidence. Counsel asserted:

> As far as the harm analysis, because it is presumptively prejudicial, we do not have to prove harm under a speedy trial analysis under the Sixth Amendment. However, Judge, we have done that. We have investigated this case, and we have learned of our own investigation that there is no physical evidence of the rape kit in the sexual assault allegation. We have learned that the clothes of the complaining witness are no longer available for any testing or analysis. We have learned that a T-shirt allegedly belonging to the defendant has been lost, also. That is actual harm that cannot be refuted by the State.

---

[6] The only evidence that appellant produced at the hearing was a business records affidavit from a hospital, which stated that the hospital had no medical records bearing the complainant's name. Appellant did not emphasize the affidavit in the trial court as a basis for finding prejudice, and he does not even mention the affidavit in his brief on appeal. Following our standard of review, we can infer that the trial court made an implied finding that the affidavit did not demonstrate actual prejudice.

This argument cuts both ways, though, because the lost evidence could have been incriminating or exculpatory. *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). In fact, the State argued that it had suffered prejudice from this lost evidence—not appellant. Without knowing the quality of the evidence, appellant can only speculate that the loss has impaired his defense. *Cf. Oregon v. Stokes*, 248 P.3d 953, 963 (Ore. 2011) (in a case concerning pre-indictment delay, the destruction of a rape kit and other evidence did not demonstrate actual prejudice where the quality of the evidence was unknown).

Complicating this case further is that appellant never identified what his defensive theory would have been had the case been tried in a timely manner. The criminal complaint alleged that appellant invited the complainant, a massage therapist, over to his apartment for the purpose of procuring a massage. Soon after the complainant arrived, appellant allegedly began to refer to prior conversations with the complainant that, she claimed, never occurred. When the complainant attempted to leave, appellant allegedly put the complainant in a headlock and threatened to kill her with a knife. He then allegedly raped her and forced her to perform oral sex. After the incident, appellant allegedly started crying and allowed the complainant to leave.

At least two defensive theories can be imagined on the facts alleged in the complaint. First, appellant could have made the case about identity and claimed that he was not the person who raped the complainant. Second, appellant could have admitted to having intercourse with the complainant and then, while denying all aspects of violence, made the central question one of consent.

If appellant had asserted a defense about identity, the rape kit clearly would have been material, at least to the extent that it contained DNA evidence. The clothing would have been material, too, if it could be compared with appellant's

15

body type or other clothing belonging to him, or if it contained biological evidence that was also capable of DNA analysis. And of course, the photospread would have been important to any discussion of identity. We note, however, that defense counsel did not draw attention to the missing photospread in her closing argument. That hampers our ability to consider the photospread in our analysis of prejudice. *See Dragoo*, 96 S.W.3d at 315 (holding that the court of appeals had erred by considering an argument for prejudice that had not been presented to the trial court). Counsel's omission also creates some uncertainty as to whether appellant even intended to claim this defense in the first place.

Had appellant asserted the second defense, then in all likelihood, the physical evidence would have had little to no bearing on the jury's assessment of guilt. Because appellant would have admitted to having intercourse with the complainant, the main question at trial would have been whether the intercourse was consensual. Questions of consent are usually determined by the credibility of the complainant and the defendant, rather than by the physical evidence. *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). Accordingly, if appellant intended to pursue a defense that the intercourse was consensual, the trial court could have reasonably found that appellant would not have been prejudiced by the missing physical evidence. *See Massachusetts v. Butler*, 985 N.E.2d 377, 387 (Mass. 2013) (the loss of physical evidence did not demonstrate actual prejudice in a speedy-trial claim where the defendant conceded to having intercourse with the complainant).

Although the trial court was aware that evidence had been lost, the trial court could not have determined whether that loss amounted to actual prejudice

without first hearing how that evidence factored into appellant's defensive theory.[7] Because appellant never identified a theory, the trial court was free to find that appellant did not prove that his defense was impaired. We defer to this implied finding.

We conclude that this final factor does not weigh in appellant's favor because appellant did not make a prima facie showing of prejudice. *See Ortega v. State*, 472 S.W.3d 779, 787–88 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that the defendant had not made a prima facie showing of prejudice where she offered no evidence on this issue).

***The Balancing Test.*** We must now engage in a "difficult and sensitive balancing process." *See Barker*, 407 U.S. at 533. This analysis is fact-intensive and must be performed on an ad hoc basis. *See Cantu*, 253 S.W.3d at 280.

The record shows that there is fault to be shared by both sides. The State knew of appellant's exact location for more than eighteen years, and for that entire length of time, the State could have demanded his presence for trial under the IAD. But because of official negligence, there was only inaction. Appellant also knew that there was a charge pending against him, but he too remained inactive, perhaps hoping to fly under the radar or to benefit from the loss of evidence. That inaction is inconsistent with a person seeking to preserve and protect his right to a speedy trial. The first two factors favor appellant, but those factors are largely offset by the third, which favors the State. *See Barker*, 407 U.S. at 536 ("[W]e would be

---

[7] The Supreme Court held in another speedy-trial case that there was "abundant evidence of actual prejudice" where the record showed the death of two potential witnesses, the unavailability of another, and the loss of certain police records, which were described as being "of possible relevance." *See Dickey v. Florida*, 398 U.S. 30, 36, 38 (1970). In that case, however, the defendant made his defensive theory known to the court by claiming an alibi. *Id.* at 36. Appellant, by contrast, did not make his defensive theory known, and that compromises our ability to weigh the loss of evidence.

reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."); *Cantu*, 253 S.W.3d at 281 ("The constitutional right is that of a speedy trial, not dismissal of the charges.").

As for the final factor, we explained above that a presumption of prejudice would be inappropriate in this case because appellant acquiesced in the delay. Appellant needed to produce some evidence to show that the delay impaired his defense, but he never even informed the court what his defense was. Without that basic showing, appellant did not demonstrate prejudice. Balancing all four factors together, we cannot say that the State violated appellant's constitutional right to a speedy trial.[8]

To our knowledge, no court in Texas has ever "excused" a delay approaching eighteen years, especially when the defendant's whereabouts were known the entire time. And we do not do so today. We cannot consider any one factor as dispositive. We cannot look solely at the time that elapsed, nor at the defendant's tardiness in demanding a speedy trial. Either approach would ignore the balance necessary under *Barker*. Given the *Barker* factors and the facts and circumstances of this case, on balance, the record supports the ultimate conclusion that appellant did not really want a speedy trial. Appellant's failure to present the trial court with any information about how the lost physical evidence was even related to his defense weighs heavily in our analysis.

---

[8] As a practical matter, a reversal in this case would have almost no meaning for appellant given the length of his Nebraska sentences. The sentence in his Texas case was ordered to run concurrently with his Nebraska sentences, and appellant has already received credit for time served in Nebraska. If all goes according to schedule, appellant will be discharged from his Texas case within a decade, which is long before he ever becomes eligible for parole in Nebraska. The greatest impact this case could have on appellant appears to be with his chances for parole or some other form of executive clemency, should he be considered for it.

The State should not feel encouraged that delays of similar magnitude will always be excused in the end. The State has the "primary burden" of ensuring that cases are brought to trial in a manner that "comports with constitutional principles." *See Barker*, 407 U.S. at 529. The delay experienced in this case falls beneath that standard. We will continue to look upon such delays with great disfavor.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
       Justice

Panel consists of Justices Christopher, McCally, and Busby.
Publish — Tex. R. App. P. 47.2(b).