**Affirmed and Opinion filed April 28, 2020.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-18-00433-CR

**DENNIS LEE RICHARDSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1505670**

## O P I N I O N

Appellant Dennis Richardson appeals his conviction for aggravated sexual assault of a child. He seeks reversal on three unrelated grounds, asserting that the trial court erred by (1) failing to dismiss his case based on a speedy-trial violation, (2) allowing the prosecution of the offense in violation of the Ex Post Facto Clause of the United States Constitution, and (3) failing to declare a mistrial *sua sponte* after discovering that a juror saw appellant being escorted to the courthouse elevators. We affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The charged offense occurred on or about July 2, 2000, when the complainant, Belle, then thirteen years old,[1] went to visit a friend at an apartment complex where appellant also resided. According to testimony at trial, appellant, who previously had been Belle's boyfriend, and another man (later a co-defendant) took Belle into an empty townhome and forced her to have sex with them. Belle reported the incident and underwent a rape-kit procedure for the collection of samples. For fifteen years the case stood stagnant. As part of an initiative to eliminate a backlog of sexual-assault-evidence collection kits, examiners evaluated the rape kit in Belle's case.

On June 23, 2016, the State charged appellant by indictment with aggravated sexual assault of a child, Belle. The appellant pleaded "not guilty." Trial began in early May 2018. The jury heard four days of testimony, including evidence that appellant had committed two extraneous sexual assaults. After deliberating for just under an hour, the jury found appellant guilty of the charged offense. The same jury assessed punishment and on its recommendation the trial court sentenced appellant to sixty years'confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant timely filed his notice of appeal.

## II. ISSUES AND ANALYSIS

### A. Did the trial court err by denying appellant's motion to dismiss for an alleged violation of appellant's right to a speedy trial?

In his first issue, appellant complains that the trial court erred in denying his motion to dismiss for a violation of his right to a speedy trial. As part of its response, the State argues appellant failed to preserve this point for appellate review.

---

[1] To protect the privacy of the complainant, we use a pseudonym to refer to her.

To preserve error for appellate review, subject to limited exceptions, a defendant must make a timely request, objection, or motion in the trial court (regardless of whether the complaint implicates constitutional rights) and, in most cases, secure a ruling. Tex. R. App. P. 33.1(a). In *Henson v. State*, the Court of Appeals concluded that the error-preservation requirement applies to speedy-trial claims. 407 S.W.3d 764, 767–68 (Tex. Crim. App. 2013). In its analysis, the *Henson* court explained that requiring the defendant to preserve error on a speedy-trial claim forces the defendant to pick a strategy. *Id*. at 769 (stating the defendant "can either fail to insist upon a speedy trial and possibly reap benefits caused by delay, or [the defendant] can insist on a prompt trial, and if it is not granted, argue for a dismissal. [The defendant] may not do both."). The *Henson* court also explained that requiring the defendant to preserve error on a speedy-trial claim forces the defendant to develop a record on the issue in the trial court. *Id*.

Before the commencement of trial, appellant filed his original motion on September 6, 2017 (and an amended motion on January 20, 2018), urging the trial court to dismiss for failure to provide due process of law and a constitutionally-mandated speedy trial. Then, on May 6, 2018, appellant filed a trial memorandum alleging violations of his constitutional right to a speedy trial. Two days later, the trial court denied appellant's motion in open court.

The State contends that on appeal appellant has failed to assert a complaint that comports with his speedy-trial objections based on the time between his indictment and the commencement of trial, because the focus of these motions and memorandum were delays related to appellant's arrest. The State also contends that appellant failed to take steps necessary to develop the record to analyze the factors under *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), and, in particular, that appellant failed to secure a hearing.

In appellant's trial-court motions, he focused primarily on a different issue — the delay between the time of the offense and appellant's arrest, which is not at issue in this court. But, in his amended motion, appellant also complained of the delay between the time of his arrest and trial, and appellant cited the Sixth Amendment of the United States Constitution, which bestows that right. In sum, the record reveals that (1) appellant objected, (2) his speedy-trial complaint on appeal sufficiently comports with an objection he asserted in the trial court, and (3) he secured a ruling on the objection from the trial court. We conclude that appellant preserved his speedy-trial complaint in the trial court. *See* Tex. R. App. P. 33.1(a); *Henson*, 407 S.W.3d at 767–68. So, he is entitled to a merits review on appeal.

### *Standard of Review*

The right to a speedy trial attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). A court analyzes a speedy-trial claim on a case-by-case basis by balancing the following factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice inflicted on the defendant by the delay. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Henson*, 407 S.W.3d at 767; *Cantu*, 253 S.W.3d at 281. The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Cantu*, 253 S.W.3d at 281. There is no set time element that triggers the *Barker* analysis, but the Court of Criminal Appeals has held that a delay of four months is not sufficient while a seventeen-month delay is. *See id*. Once the *Barker* test is triggered, courts must analyze the speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." *Id*. No one factor is

"either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id*. Instead, the four factors are related and must be considered together along with any other relevant circumstances. *Id*. As no factor possesses "talismanic qualities," courts must engage "in a difficult and sensitive balancing process" in each individual case. *Id*.

Dismissal of the charging instrument with prejudice is mandated only upon a finding that the accused's Sixth Amendment speedy-trial right was actually violated. *Id*. Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error." *Id*. (internal quotations and citation omitted). Thus, courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Id*. The constitutional right is that of a speedy trial, not dismissal of the charges. *Id*.

We apply a bifurcated standard of review to a trial court's ruling on a speedy-trial claim. *Id*. at 282. We review the factual components for an abuse of discretion and the legal components de novo. *Id*. Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is "a purely legal question." *Id*. As to the trial court's determination of factual issues, we view all the evidence in the light most favorable to the trial court's ruling. *Id*.

### Length of the Delay

In analyzing delay in the speedy-trial context, we exclude the time covered by agreed resets from the calculation "because agreed resets are inconsistent with [the] assertion of a speedy trial right." *Smith*, 436 S.W.3d at 365 (internal

5

quotations and citation omitted). For purposes of appellant's speedy-trial claim, the relevant time period begins on the date of arrest. *See Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002). Appellant was arrested on April 15, 2016. The trial court reset the case at appellant's request and with the State's agreement on May 18, 2016. Following appellant's June 23, 2016 indictment, the trial court again reset the case at appellant's request and with the State's agreement on July 5, 2016. The following month, on August 17, 2016, appellant appeared with retained counsel to substitute for appellant's appointed counsel. The trial court reset the case that day and then again on September 13, 2016, October 20, 2016, December 2, 2016, December 20, 2016, February 2, 2017, February 10, 2017, March 16, 2017, April 18, 2017, May 19, 2017, June 22, 2017, and July 26, 2017. Appellant requested and the State agreed to each of these resets. On the last reset of this series (July 26, 2017), the trial court reset the case to September 13, 2017, at the appellant's request and with the State's agreement.

On September 6, 2017, appellant filed his first "Motion to Dismiss for Failure to Provide Due Process of Law and a Constitutional Speedy Trial." The following month, on October 6, 2017, the trial court reset the case again to December 6, 2017, for pre-trial motions at the appellant's request and with the State's agreement. On December 18, 2017, appellant appeared along with his trial counsel and the trial court reset the case at the appellant's request and with the State's agreement to January 23, 2018. On January 22, 2018, appellant appeared with his trial counsel and filed a motion for continuance. The trial court heard the motion that day (January 23, 2018) and granted the continuance, resetting the case to May 7, 2018, for jury trial at appellant's request and with the State's agreement. Trial commenced on that date.

Although we exclude from the calculation the time covered by the agreed

resets, we count the time from appellant's motion for continuance on January 23, 2018 through May 7, 2018, as the State suggests we should. Under this calculation the delay from arrest to the commencement of trial spanned approximately five months. A sister court of appeals has concluded that a seven-month delay was not "presumptively prejudicial." *See State v. Thomas*, 453 S.W.3d 1, 4–5 (Tex. App.—Dallas 2014, no pet.). Even if we were to find that the five-month delay was "presumptively prejudicial," thus triggering application of the four *Barker* factors, as shown below, a weighing and balancing of the *Barker* factors shows that the trial court did not err in denying appellant's motion to dismiss alleging a violation of appellant's right to a speedy trial.

### *Reason for the Delay*

The particular reason for the delay will determine how heavily this factor should weigh against the State. *See Zamorano*, 84 S.W.3d at 649. Prosecutorial delay determined to be intentional or deliberate will weigh heavily against the State. *Id*. Delays determined to be more neutral in nature, such as those owing to negligence or overcrowded courts, will weigh less heavily against the State. *Id*. Any delay that is determined to be valid should not weigh against the State at all. *See State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). When the State has not assigned a reason for the delay, this factor weighs in favor of finding a speedy-trial violation but not heavily in favor of such a finding. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). In this situation, we may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. *Id*. The reason for the delay is a fact-specific inquiry and may not be readily apparent from the trial record. *Henson*, 407 S.W.3d at 769.

The period between appellant's first speedy-trial motion and his request to reset the case spanned a month, and the State has offered a neutral reason for this

7

delay: it fell in the aftermath of Hurricane Harvey, during a time the trial court was recovering from the effects of that disaster on court operations.

To determine the reasons for the four-month delay, we look to appellant's motion for continuance. Appellant based the request on his stated need to compel discovery and to have time to transcribe tape recordings. Appellant based the need for the continuance on the State's alleged failure to provide timely discovery before the January 22, 2018 trial date. In his motion to compel, appellant sought several items not contained in the State's file, which appellant's counsel claimed he was led to believe existed. Our review of the record reveals no bad faith on the part of the State.

At the hearing on the motion for continuance, appellant's counsel stated that "[the prosecutor has] been very cooperative" in reference to the discovery. The prosecutor reported that she had turned over everything in her possession at the time, noted that additional items had just come into her possession, and stated that she would make those items available to appellant. The State demonstrated diligence in searching for the requested items and had taken steps to confirm that some of the requested items did not exist. In short, nothing in the record shows that the prosecutors were withholding discovery intentionally. Many of the requested items did not exist; other items took more time to obtain. The record does not reflect that this delay was deliberate or the result of bad faith on the part of the State. On this record, the only finding that the trial court reasonably could have made was that the State's reason for the four-month delay was its own negligence. This factor weighs in favor of finding that the State violated appellant's right to a speedy trial, although not heavily. *See Hopper v. State*, 495 S.W.3d 468, 478 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017).

*Assertion of the Right*

In conducting the speedy-trial analysis, courts give strong weight to when and how a defendant asserts the defendant's right to a speedy trial. *Cantu*, 253 S.W.3d at 283. A defendant's lack of diligence in seeking a speedy trial can be an indication that the defendant does not want one. *See id*. ("[T]he failure to diligently seek a speedy trial supports the hoary lawyer's adage, 'Never tried, never convicted.'"); *see also Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (stating that "a defendant's failure to make a timely demand for a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not having one."). Thus, a defendant's inaction weighs more heavily against finding a violation as the length of the delay increases. *Shaw*, 117 S.W.3d at 890. A speedy-trial demand must be unambiguous. *Henson*, 407 S.W.3d at 769. Although a tardy assertion will not be construed as a waiver of the right, a defendant's tardiness will make it difficult to prove denial of a speedy trial. *Barker*, 407 U.S. at 528.

The record shows that appellant did not assert his speedy-trial right until eighteen months after he was charged, nearly four times the duration of the actual delay suffered. His first speedy-trial motion, when considered alongside the resets which he requested, hardly reflects "the actions of someone seeking to preserve and protect his right to a speedy trial." This factor weighs heavily against finding a speedy-trial violation. *See Dragoo*, 96 S.W.3d at 315 ("In view of the lengthy delay here, in which appellant quietly acquiesced, this factor weighs very heavily against finding a violation of the speedy trial right"); *see also Smith*, 436 S.W.3d at 366 (concluding factor weighed against appellant when assertion of right was tardy and trial occurred three months later).

*Prejudice Assessment*

We assess prejudice in light of the interests that the speedy-trial right is designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. *Zamorano*, 84 S.W.3d at 652. The defendant shoulders the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *Munoz*, 991 S.W.2d at 826; *State v. Smith*, 76 S.W.3d 541, 551 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). When the defendant makes a prima facie showing of prejudice, the burden then shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Munoz*, 991 S.W.2d at 826.

We assess prejudice according to a sliding scale. The longer the State's delay and the greater its negligence, the less the defendant must show that the defendant suffered actual prejudice. *See Hopper*, 495 S.W.3d at 479; *Cantu*, 253 S.W.3d at 280–81. In today's case, we deem some of the delay as negligence attributable to the State, so we deem appellant's burden moderate.

The record shows that appellant was incarcerated from the time of his arrest until the time of trial, but he did not note this fact as a basis for prejudice. Appellant also has not presented evidence supporting an inference that the interest in minimizing his anxiety and concern was implicated under these circumstances. In his speedy-trial motion he stated only that "[t]he Defendant has been prejudiced by the State's unreasonable delay because, among other things, defense witnesses are unavailable and witnesses remaining have forgotten the facts that would be beneficial to the Defendant." But appellant based this alleged prejudice on the delay between the date of the charged offense and date appellant was indicted, not on the five-month delay at issue on appeal. In short, appellant did not demonstrate

10

that unavailability or lack of recollection of witnesses occurred during the pendency of his case, but instead argued that the loss of evidence was the product of the sixteen-year delay in charging him with the offense.

Appellant failed to make a showing that he suffered prejudice in his ability to defend himself as a result of the delay. *See Barker*, 407 U.S. at 533–34; 92 S.Ct. at 2193–94 (defendant's Sixth Amendment right to speedy trial not violated where defendant was not seriously prejudiced by five-year delay between arrest and trial and defendant did not want speedy trial,). Even accounting for the time appellant was incarcerated, this factor weighs against finding a speedy-trial violation.

*Balancing of Factors*

We conclude that the weight of the four factors, balanced together, goes against finding a violation of appellant's right to a speedy trial. *See id.* at 534 (concluding defendant's right to speedy trial was not violated when he was not seriously prejudiced by five-year delay between arrest and trial and did not really want a speedy trial); *see also Dragoo*, 96 S.W.3d at 308 (holding defendant's right to speedy trial was not violated when he demonstrated no serious prejudice by three-and-one-half-year delay between arrest and trial and he waited until just before trial to assert his right to a speedy trial). Accordingly, we overrule appellant's first issue.

**B. Did the Legislature violate the United States Constitution's Ex Post Facto Clause by enacting a statute providing that no statute of limitations applies to the charged offense?**

In appellant's second issue, he complains that prosecution of his case sixteen years after the charged offense violated the United States Constitution's Ex Post Facto Clause based on a legislative enactment that changed the statute-of-limitations period applicable to the aggravated-sexual-assault-of-a-child offense.

The United States Constitution explicitly provides that "no Bill of Attainder or ex post facto law shall be passed." U.S. Const. Art. I, § 9. On April 8, 2016, appellant was charged with committing the offense of aggravated assault of a child on or about July 2, 2000. At the time of the offense, the statute of limitations for aggravated sexual assault of a child under article 12.01 of the Texas Code of Criminal Procedure was ten years after the date of the victim's eighteenth birthday. Act of May 24, 1997, 75th Leg., R.S., ch. 740, § 1, 1997 Tex. Gen. Laws 2403, 2403. The complainant, Belle, turned eighteen years old on February 17, 2005. Thus, the statute of limitations would have expired on February 17, 2015, under the statute in effect at the time of the offense.

The Legislature has amended article 12.01 of the Texas Code of Criminal Procedure many times since the date of the offense. In one of these amendments, the Legislature modified the statute of limitations applicable to the charged offense in today's case. In 2007, still before the statute of limitations in effect at the time of the charged offense had run, the Legislature amended article 12.01 of the Texas Code of Criminal Procedure to provide that, effective September 1, 2007, no statute of limitations applies to the offense of aggravated sexual assault of a child. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.03, art. 12.01, 2007 Tex. Gen. Laws 1120, 1120. Appellant argues that the change in the law to "no limitation" deprived him of the statute-of-limitations defense. Appellant acknowledges the body of established case law permitting the extension of the limitations period for an offense, provided that the limitations period in effect at the time of the offense has not yet lapsed. *See Phillips v. State*, 362 S.W.3d 606, 612–16 (Tex. Crim. App. 2011), *abrogated on other grounds by Ex parte Heilman*, 456 S.W.3d 159, 168–69 (Tex. Crim. App. 2015). To the extent that appellant asserts a statute-of-limitations defense, we overrule that challenge. Appellant failed

12

to preserve error in the trial court on that complaint, and even presuming he had, he could not prevail on the merits because no statute of limitations applies to this offense. *See* Act of May 18, 2007, 2007 Tex. Gen. Laws at 1120; *Phillips*, 362 S.W.3d at 612–16.

Appellant argues that under *Calder v. Bull*, using article 12.01 as applied to appellant's case would be an ex post facto violation because it would be "manifestly unjust and oppressive." *See Calder v. Bull*, 3 U.S. 386, 390-91 (1798). But, as the State points out, the Supreme Court of the United States, in *Stogner v. California*, addressed the Ex Post Facto Clause as it pertains to statutes of limitations and concluded that a legislative extension of the statute of limitations that comes before the original statute of limitations expires does not violate this constitutional provision. 539 U.S. 607, 618–19 (2003) (holding that a law extending the limitations period enacted after expiration of a previously applicable statute of limitations violates the Ex Post Facto Clause; whereas a law extending the limitations period enacted before expiration of a previously applicable statute of limitations does not violate this clause).

The 2007 amendment to article 12.01 at issue in today's case does not violate the constitutional prohibition against ex post facto laws. *See id*; *Phillips*, 362 S.W.3d at 612–16. Further, because the limitation period for the charged aggravated sexual assault in this case had not expired before the Legislature amended the limitation period, the State's prosecution of appellant did not violate the constitutional prohibition against ex post facto laws. *See Stogner*, 539 U.S. at 618–19; *Phillips*, 362 S.W.3d at 612–16. Therefore, we overrule appellant's second issue.

**C. Did the trial court err by failing to grant a mistrial sua sponte after learning that a juror had seen the bailiff escorting appellant into the courthouse elevator?**

In appellant's third issue, he complains that the trial court abused its discretion when it failed to grant a mistrial sua sponte after discovering that a juror had seen the bailiff escort appellant inside the courthouse. Out of the hearing of the other jurors, the trial court asked the juror what she had seen, and the juror said that in the morning she had seen the bailiff taking appellant into the courthouse elevator on the way up to the courtroom. The trial court admonished the juror (1) not to consider the fact that the bailiff was escorting appellant in the building as evidence in this case, (2) not to consider that fact in deliberating on this case, and (3) not to tell the other jurors what she had seen. The juror indicated that she would follow these instructions.

To preserve error, an appellant must make a timely and specific motion as soon as the grounds for it become apparent. Tex. R. App. P. 33.1; *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Upon learning of the juror's out-of-court sighting of the appellant being escorted to the courtroom by the bailiff, appellant's counsel made no motion in reference to the matter, and the record does not indicate that appellant requested an instruction or other court action. Appellant's counsel did not object to the instruction the court gave the juror and did not request a mistrial — he stood silent on the matter. Appellant did nothing to preserve the complaint he raises on appeal. The record reflects that appellant did not preserve error in the trial court on his third issue.

Appellant does not claim that he preserved error. Instead, he argues the law does not require preservation of error on this point and that the trial court should have granted a mistrial sua sponte. The State argues that the law requires preservation of error. The record does not reflect whether appellant was in jail

14

clothes or handcuffed when the juror saw him entering the elevator. Appellant suggests that he was. We presume for the sake of argument that appellant was wearing jail clothes and handcuffed at this time. In this context, seeing appellant wearing jail clothes and handcuffs would convey to a reasonable person in the juror's position that appellant was being held in jail during the trial. Thus, we conclude that this situation is analogous to a juror or the jury seeing appellant in jail clothes.

In a landmark decision in the law of error preservation, the Court of Criminal Appeals, in *Marin v. State,* determined that an appellant must preserve error in the trial court as to all complaints, except as to two relatively small categories of errors: violations of "rights which are waivable only" and denials of "absolute systemic requirements." *See Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002); *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993). Waivable-only rights are those that the trial court has an independent duty to implement absent any request unless there is an effective express waiver. *See Grado v. State*, 445 S.W.3d 736, 738–39 (Tex. Crim. App. 2014). Examples of these rights include the right to the assistance of counsel and the right to trial by jury. *See Saldano*, 70 S.W.3d at 888; *Marin*, 851 S.W.2d at 280. Absolute systemic requirements are those "widely considered so fundamental to the proper functioning of our adjudicatory process . . . that they cannot be forfeited . . . by inaction alone." *Grado*, 445 S.W.3d at 739. Absolute, systemic requirements include personal jurisdiction, subject-matter jurisdiction, and a penal statute's being in compliance with the Texas Constitution's Separation of Powers provision. *See Saldano*, 70 S.W.3d at 888; *Marin*, 851 S.W.2d at 279.

Like the complaint that the defendant wore jail clothes during trial, the complaint in appellant's third issue implicates neither a waivable-only right nor an

absolute systemic requirement. *See Estelle v. Williams,* 425 U.S. 501, 512-13 (1976) (holding, when inmate wore jail attire during trial, his failure to object in trial court negated the presence of compulsion necessary to establish a constitutional violation); *Randle v. State*, 826 S.W.2d 943, 944–45 (Tex. Crim. App. 1992) (concluding that appellant was required to preserve error in the trial court as to complaint that appellant was wearing jail clothes during trial); *Lantrip v. State*, 336 S.W.3d 343, 351 (Tex. App.—Texarkana 2011, no pet.) (same)). Therefore, the law required appellant to preserve error in the trial court as to his third issue, and by failing to do so, appellant waived this complaint. *See Estelle*, 425 U.S. at 512–13; *Saldano*, 70 S.W.3d at 888–90; *Randle*, 826 S.W.2d at 944–45; *Lantrip*, 336 S.W.3d at 351. We overrule appellant's third issue.

### III. CONCLUSION

Having overruled each of the issues appellant has presented on appeal, we affirm the trial court's judgment.


/s/     Kem Thompson Frost
        Chief Justice



Panel consists of Chief Justice Frost and Justices Wise and Hassan.

Publish — TEX. R. APP. P. 47.2(b).