**Opinion issued February 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00861-CR

————————————

**THE STATE OF TEXAS, Appellant**

**V.**

**MARCO ANTONIO MORENO, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case No. 16199**

---

## O P I N I O N

A grand jury indicted appellee, Marco Antonio Moreno, for the felony offense

of aggravated assault with a deadly weapon in 2012.[1] Over seven years later, in 2019,

---

[1] The indictment also alleged an enhancement paragraph. *See* TEX. PENAL CODE
§ 22.02(a)–(b) (setting out elements of aggravated assault and providing that offense
is typically second-degree felony); *id.* § 12.42(b) ("[I]f it is shown on the trial of a

Moreno moved to set aside the indictment, asserting the State had violated his speedy trial right under the Sixth Amendment. The trial court granted Moreno's motion and dismissed the indictment with prejudice.

In its sole issue on appeal, the State contends the trial court erred in granting Moreno's motion to set aside the indictment because it did not conduct a proper analysis under applicable United States Supreme Court precedent.

We affirm.

## Background

On April 18, 2012, a grand jury indicted Moreno for aggravated assault with a deadly weapon (the "assault charge"). The same day, the grand jury also indicted Moreno on an unrelated charge for possession of a controlled substance (the "possession charge"). The trial court appointed counsel to represent Moreno. Four months later, in August 2012, Moreno sought a reduction of his bond. The trial court denied this motion, and Moreno remained in custody.

About three weeks before the first trial setting in September 2012, Moreno moved for a psychiatric examination, requesting that an expert be appointed to examine his sanity and competency to stand trial. The trial court granted this motion. Over the next fifteen months, both Moreno and the State moved for competency

felony of the second degree that the defendant has previously been finally convicted of a felony other than a state jail felony under Section 12.35(a), on conviction the defendant shall be punished for a felony of the first degree.").

2

determinations, and multiple competency evaluations by experts occurred. On December 11, 2013, after a trial, a jury determined that Moreno was competent to stand trial.[2] Following the jury's competency verdict, the trial court set both cases against Moreno for a jury trial on January 6, 2014. Moreno moved for a new trial on the competency issue, and while the trial court denied the motion for new trial, it reset the cases on the jury trial docket for April 28, 2014.

On April 28, 2014, a jury trial was held solely on the possession charge. The assault charge—the charge underlying this appeal—did not proceed to trial. After the jury found Moreno guilty of possession of a controlled substance, the trial court, in June 2014, assessed his punishment at confinement for 33 years. Moreno appealed his conviction to this Court, and his appointed appellate counsel filed a brief under *Anders v. California*. *See* 386 U.S. 738, 744 (1967) (establishing procedure for appointed counsel to follow if counsel determines that appeal is wholly frivolous). On September 24, 2015, a panel of this Court issued a memorandum opinion holding that Moreno's appeal was frivolous (the "possession appeal"). *See Moreno v. State*, No. 01-14-00584-CR, 2015 WL 5626624, at *1 (Tex. App.—Houston [1st Dist.] Sept. 24, 2015, no pet.) (mem. op., not designated for publication) (per curiam). We

---

[2]    Shortly before the competency trial, the trial court granted Moreno's motion for substitution of counsel. Moreno's second attorney remained his counsel of record until January 2019.

granted his appointed counsel's motion to withdraw and affirmed the judgment of conviction for possession. Our mandate issued on December 4, 2015.

Six days before this Court issued its opinion in the possession appeal, on September 18, 2015, Washington County District Clerk Tammy Brauner emailed the assigned prosecutor for Moreno's cases about the status of the still-pending assault charge. In this email, Brauner stated:

> We still show cause no. 16199-Marco Moreno [assault] pending. He had two cases 16198 and 16199 that went to jury trial but we only finished cause no. 16198 [possession]. Can you please check on this whenever you get a chance and let me know the status.

The prosecutor responded:

> It is still pending. Although evidence of 16199 [assault] came in during the punishment portion of 16,198 [possession], 16199 is still alive and well. We have not determined when we want to request the court to bench warrant Moreno back to take him to trial on 16199.

A copy of this email exchange was filed with the district clerk the same day.

In summer 2018, Moreno was granted parole on the possession conviction and was released from confinement. In October 2018, the trial court coordinator issued a scheduling order setting the assault charge for a non-trial setting on December 6, 2018. The case was reset until January 10, 2019, "[t]o allow [Moreno] time to retain an attorney." Moreno's counsel, who had represented him since December 2013, moved to withdraw. The trial court granted the motion and reset the case until January 24, 2019, for appointment of new counsel.

4

On January 24, 2019, the trial court appointed new counsel for Moreno. That same day, the State moved to find Moreno's bond insufficient. In this motion, the State recited the history of the case as follows:

> At some point during the summer of 2018, Moreno was released on parole. Due to being incarcerated on a drug offense, no notice was given to the victim or the District Attorney's Office of his release. It was only during a chance conversation with officers from the Brenham Police Department that the District Attorney's Office became aware of his presence in the community.

The State argued that, by releasing Moreno on the possession conviction, the Texas Department of Criminal Justice ("TDCJ") had improperly granted Moreno a personal recognizance bond for the assault charge. The State requested that the trial court "find Defendant's personal recognizance bond invalid and issue a capias for his arrest." The trial court granted the State's motion, issued a capias for Moreno's arrest, and set his bond at $25,000. The same day, Moreno executed a surety bond.

Also on January 24, 2019, the trial court coordinator issued a scheduling order, signed by counsel for both Moreno and the State, setting the assault charge for a jury trial on August 19, 2019. One month before this trial setting, on July 19, 2019, Moreno moved to set aside the assault indictment with prejudice for the failure to afford him his right to a speedy trial under both the United States and Texas Constitutions. This motion was originally set for hearing on July 25, 2019 but was later reset for November 1, 2019. The case was also placed on the bench trial docket for the same date.

At the hearing on Moreno's motion, the trial court agreed to take judicial notice of Moreno's file. Two witnesses testified at this hearing: Brauner and Kenneth Franklin, the director of a men's recovery center in Bryan, Texas. Brauner testified about the email exchange she had with the prosecutor in September 2015.

Franklin testified that he has been the director of a men's recovery center in Bryan for three years. Moreno came to the center as a client about 18 months before the hearing, but he had graduated from the recovery program and now worked as an intern for the program. Franklin was aware that Moreno had been released on parole. Franklin was also aware of Moreno's mental health history and stated that he interacts with Moreno every day and Moreno confides in him. Once a month, Franklin takes Moreno to get an injection at MHMR Mental Health in Bryan to help with his anxiety. Franklin testified that Moreno does not sleep well, he "worries a lot," and "[s]ometimes he gets sort of, like, a paranoid state, like, he wants to be to himself." Franklin believed that Moreno was worried about his future and that he could go back to prison. On cross-examination, Franklin agreed that Moreno was on parole for at least the next 20 years and could be sent back to prison for violating his parole. He agreed with the State that Moreno "could be worried about that, too, separate and aside from this case."

At the close of the hearing, the trial court granted Moreno's motion to set aside the assault indictment and dismissed the indictment with prejudice. At the State's

6

request, the trial court issued written findings of fact and conclusions of law in support of its order dismissing the indictment. The State appealed the trial court's order. *See* TEX. CODE CRIM. PROC. art. 44.01(a)(1) (permitting appeal of order dismissing indictment).

## Right to a Speedy Trial

In its sole issue, the State contends that the trial court erred by granting Moreno's motion to set aside the indictment for violating his speedy trial right.

### A.     Governing Law

In all criminal prosecutions, the Sixth Amendment guarantees the defendant a speedy trial. U.S. CONST. amend. VI; *Vermont v. Brillon*, 556 U.S. 81, 89 (2009); *see also* TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury."); *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008) (noting speedy trial right under Texas Constitution "exists independently of the federal guarantee" but is analyzed using same factors as federal speedy trial claims). This guarantee is "one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967). Yet the right remains "vague," "amorphous," and "slippery," making it "impossible to determine with precision when the right has been denied." *Barker v. Wingo*, 407 U.S. 514, 521–22 (1972). It is not subject to quantification in days or months. *Ussery v. State*, 596 S.W.3d 277, 282 (Tex. App.—Houston [1st Dist.] 2019,

7

pet. ref'd). Instead, its status depends on the application of the balancing test adopted by the United States Supreme Court in *Barker v. Wingo*, "in which the conduct of both the prosecution and the defendant are weighed" on an ad hoc basis, considering these four factors:

(1)  length of the delay;

(2)  reason for the delay;

(3)  the defendant's assertion of the right; and

(4)  prejudice to the defendant.

407 U.S. at 530; *see Cantu*, 253 S.W.3d at 280. The State bears the burden of justifying the length of the delay, but the defendant has the burden of proving assertion of the right and showing prejudice. *Cantu*, 253 S.W.3d at 280; *Ussery*, 596 S.W.3d at 283. The defendant's burden on the latter factors "'varies inversely' with the State's degree of culpability for the delay." *Cantu*, 253 S.W.3d at 280; *see Doggett v. United States*, 505 U.S. 647, 652 (1992) ("[T]he presumption that pretrial delay has prejudiced the accused intensifies over time."). "[T]he greater the State's bad faith or official negligence and the longer that its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280–81.

The *Barker* balancing test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Id.* at 281; *see Barker*, 407 U.S. at 530 ("The

8

length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) ("This Court has reiterated that 'presumptive prejudice' 'simply marks the point at which courts deem the delay unreasonable enough to trigger [further] [i]nquiry.'") (quoting *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999)). There is no set time that triggers the analysis, but generally, courts deem delay approaching one year to be unreasonable enough to trigger the *Barker* inquiry. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016). The extent to which the delay exceeds the minimum needed to trigger the *Barker* analysis "factors into our assessment of the first *Barker* factor." *Id.*

Once the *Barker* test is triggered, we analyze the speedy trial claim by weighing the strength of each factor and then "balancing their relative weights in light of the conduct of both the prosecution and the defendant." *Cantu*, 253 S.W.3d at 281 (quotation omitted); *Ussery*, 596 S.W.3d at 283. No one factor is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. Rather, the factors are related and must be considered together, along with other relevant circumstances. *Id.*; *Cantu*, 253 S.W.3d at 281. As no factor possesses "talismanic qualities," courts must engage in a "difficult and sensitive balancing process" in each individual case. *Cantu*, 253 S.W.3d at 281.

**B.     Standard of Review**

Review of the individual *Barker* factors necessarily involves both factual determinations and legal conclusions, but the balancing of the factors as a whole is a purely legal question. *Balderas*, 517 S.W.3d at 768; *Cantu*, 253 S.W.3d at 282. Thus, we review the trial court's ruling on a defendant's Sixth Amendment speedy trial claim under a bifurcated standard. *Cantu*, 253 S.W.3d at 282. We review the factual components of the analysis for an abuse of discretion, deferring to both the trial court's resolution of disputed facts and its right to draw reasonable inferences from those facts. *Id.*; *see Balderas*, 517 S.W.3d at 767–68 ("[W]e give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings."). There are good reasons for such deference, including that the "trial judge's personal knowledge of the parties and the sequence of events [does] in fact place him in a better position to draw inferences than an appellate court without such familiarity." *Kelly v. State*, 163 S.W.3d 722, 726–27 (Tex. Crim. App. 2005). However, we review the legal components of the analysis de novo. *Cantu*, 253 S.W.3d at 282; *see Gonzales*, 435 S.W.3d at 809 ("[W]e review de novo whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors, which are legal questions.").

The trial court "may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted." *Cantu*, 253 S.W.3d at 282. The trial court may disbelieve any evidence if there is a reasonable and articulable basis for doing so. *Id.* On appeal, we must view all the evidence in the light most favorable to the trial court's ultimate ruling. *Id.*

## C.    Analysis

In analyzing Moreno's speedy trial claim, we examine each *Barker* factor in turn and then balance the factors together to determine whether Moreno's right to a speedy trial was violated.

### 1.    *Length of the delay*

The length of delay is measured from the time the defendant is arrested or formally accused. *Gonzales*, 435 S.W.3d at 809; *Ussery*, 596 S.W.3d at 284. Because of the "imprecision" of the right to a speedy trial, the length of delay that triggers an inquiry under *Barker* necessarily depends on the particular circumstances of the case. *Zamorano v. State*, 84 S.W.3d 643, 648–49 (Tex. Crim. App. 2002). "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 649. Delay approaching one year generally is unreasonable enough to trigger the *Barker* inquiry. *Balderas*, 517 S.W.3d at 768.

11

If the defendant demonstrates that the interval between accusation and trial has crossed from an "ordinary" delay to a "presumptively prejudicial" delay, we must consider the extent to which that delay stretches beyond the bare minimum needed to trigger the *Barker* analysis. *Zamorano*, 84 S.W.3d at 649. This inquiry is significant to the analysis because the presumption that a pretrial delay has prejudiced the defendant intensifies over time. *Id.* (quoting *Doggett*, 505 U.S. at 652). If a delay stretches "far beyond the minimum needed to trigger the [i]nquiry," the first factor weighs heavily in favor of finding a violation of the defendant's speedy trial right. *Balderas*, 517 S.W.3d at 768; *Zamorano*, 84 S.W.3d at 649 ("[T]he longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant.").

Moreno was indicted on the assault charge on April 18, 2012. Moreno moved to set aside the indictment on July 19, 2019, more than seven years later. On appeal, the State concedes that the delay in this case is sufficiently long to trigger a full *Barker* analysis. We agree. The delay in this case was six years longer than that generally considered "unreasonable enough" to trigger a *Barker* analysis. *See Balderas*, 517 S.W.3d at 768 ("In general, courts deem delay approaching one year to be unreasonable enough to trigger the *Barker* [i]nquiry." (quotation omitted)). Because this delay stretched "far beyond the minimum needed to trigger the inquiry," we conclude that this factor weighs heavily against the State. *See id.*;

12

*Zamorano*, 84 S.W.3d at 649 ("Because the length of the delay stretched well beyond the bare minimum needed to trigger judicial examination of the [speedy trial] claim, this factor—in and of itself—weighs heavily against the State.").

## 2.      *Reason for the delay*

As noted, the State bears the burden to justify the delay. *See Cantu*, 253 S.W.3d at 280. Related to the length of the delay is the reason the State assigns to justify the delay. *Barker*, 407 U.S. at 531. We assign different weights to different reasons. *Zamorano*, 84 S.W.3d at 649; *Balderas*, 517 S.W.3d at 768. For example:

> A deliberate attempt to delay the trial . . . to hamper the defense should be weighted heavily against the [State] . . . [while a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the [State] rather than with the defendant.

*Barker*, 407 U.S. at 531; *see also Gonzales*, 435 S.W.3d at 810 ("Unjustifiable reasons for delay count towards the 'length of delay,' while justifiable reasons for delay do not."); *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) ("[A] crowded court docket is not a valid reason for delay and must be counted against the State, although not heavily."). "Although a finding of 'bad-faith delay' renders relief almost automatic, a finding of mere negligence will not become automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Zamorano*, 84 S.W.3d at 649 (quotation omitted).

We must also consider whether the State or the defendant is more to blame for the delay. *Balderas*, 517 S.W.3d at 768. "'In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay.'" *Id.* (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)). If the State does not offer a reason for the delay, this factor weighs against the State, albeit not as heavily as if the delay were deliberate. *Hopper v. State*, 495 S.W.3d 468, 475 (Tex. App.— Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017).

In analyzing the length-of-delay factor in this case, the trial court focused on the period after April 28, 2014. We agree that any delay before this date should not weigh against either the State or Moreno because Moreno's competency was in question from September 2012 through January 2014, when the trial court denied Moreno's motion for new trial after the competency trial. The trial court then set both the underlying assault charge and the possession charge for trial on April 28, 2014, and the appellate record indicates that the parties prepared for trial on both charges.[3] We therefore conclude that any delay before April 28, 2014, was justified.

---

[3] The appellate record includes documents filed by both Moreno and the State in advance of the April 2014 trial setting that reference the cause numbers of both offenses. A copy of the trial court's docket sheet also reflects that on April 15, 2014, the court considered and denied a motion to suppress filed by Moreno. These filings indicate that the parties were preparing for trial on both charges.

*See Balderas*, 517 S.W.3d at 768 (recognizing some reasons are valid and serve to justify appropriate delay).

On April 28, 2014, however, the State prosecuted only the possession charge. The State did not prosecute the assault charge, even though it was set for trial at the same time (and Moreno was indicted for both charges on the same date). In its findings of facts, the trial court found the State "failed to insist on [the assault charge's] prosecution." This failure is unexplained by the State. In the hearing on Moreno's motion to set aside the indictment, the State did not present any testimony on the reasons for the delay in bringing Moreno to trial on the assault charge. Instead, the State sought to avoid the weight of the second *Barker* factor based on an argument that it diligently pursued the assault charge against Moreno *after* the possession trial. The record belies that claim.

The trial court's file, which was the subject of judicial notice, reveals no efforts by the State to bench warrant Moreno, obtain trial settings, or otherwise prosecute the assault charge for the more than four years after the April 2014 possession trial, until the "chance conversation" that informed the State of Moreno's release on parole at some point in summer 2018. In the 17 months after the possession trial, there was no activity *at all* in the assault case, prompting the district clerk to ask about the charge's status in September 2015. The prosecutor responded that the assault charge was "still alive and well" but the State "had not determined

15

when [it wanted] to request the court to bench warrant Moreno back to take him to trial[.]" Even after this correspondence, the case *still* lingered on the docket for another three years. The next case activity was not until October 2018, when the trial court coordinator issued a scheduling order for a non-jury setting in December 2018. Considering the State's decision to bring the assault charge to trial only after Moreno's release on parole, the trial court could reasonably find that the State simply chose not to prosecute the assault charge earlier because it was a low priority while Moreno was incarcerated for possession.

The State disagrees that it should be charged with full responsibility for this four-year delay.[4] At the speedy trial hearing, the prosecutor argued that the State had presented evidence of the underlying assault charge during the punishment phase of the possession trial.[5] Moreno then appealed his possession conviction to this Court,

---

[4]     To the extent Moreno argues that the later delay occurring in 2019 was the fault of the State, we note that Moreno was the one who sought substitution of counsel in January 2019. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) ("Delay caused by either the defendant or his counsel weighs against the defendant."); *State v. Davis*, 549 S.W.3d 688, 703 (Tex. App.—Austin 2017, no pet.) (concluding delay caused by appointment of new counsel was "justified delay"). The trial court appointed new counsel for Moreno on January 24, 2019. That same day, the court issued a scheduling order setting the case on the jury trial docket for August 19, 2019. Counsel for both Moreno and the State signed this scheduling order. Moreno's counsel filed a pretrial motion requesting discovery and *Brady* material in February 2019. Counsel then moved to set aside the indictment on July 19, 2019, one month before the jury trial setting.

[5]     Courts have held that the statements of an attorney on the record may be considered as evidence if the attorney is speaking from first-hand knowledge. *See Gonzales v. State*, 435 S.W.3d 801, 811 (Tex. Crim. App. 2014). The record indicates that the

and when the prosecutor and Brauner had their email exchange in September 2015, this Court had not yet issued an opinion in that appeal. According to the State, it would have been premature for it to proceed to trial on the assault charge before this Court's mandate issued in the possession appeal, and thus the time that elapsed for the possession appeal is delay attributable to Moreno. We disagree.

The authority the State cites in support of this contention—*State v. Davis*, 549 S.W.3d 688 (Tex. App.—Austin 2017, no pet.)—is distinguishable. In *Davis*, the defendant appealed his conviction for a single count of murder. *Id.* at 694–95. The court of appeals reversed the conviction, and on remand, the district court dismissed the indictment after finding a speedy trial violation. *Id.* In its *Barker* analysis, the court of appeals did not fault the State for the delay associated with the defendant's appeal. *Id.* at 700. Because only one offense was involved, the State could not have retried the defendant on the single murder count before the mandate issued. *See id.*

Here, however, Moreno was charged with two separate offenses: possession and assault. The trial court's jurisdiction over the assault charge thus did not depend on the mandate in the possession appeal. In addition, nothing in the record shows that the viability of the assault charge otherwise depended on the finality of the possession conviction. To the contrary, the State's readiness to bring the assault

---

prosecutor who made representations at the hearing on Moreno's motion to set aside the assault indictment was the same prosecutor who participated in the possession trial, indicating her personal knowledge of the course of that proceeding.

17

charge to trial as early as April 28, 2014, can be inferred based on the prosecutor's representation that it presented evidence of the alleged assault in the punishment phase of the possession trial.[6]

Even ignoring the time that Moreno's possession conviction was on appeal, the State has not offered a valid reason for the delay between the time the possession appeal mandate issued in December 2015 and the time the State learned of Moreno's release at some point in summer 2018. The State argues that it "accounted for this delay by citing limited time and resources," but overcrowded courts and dockets are not a valid reason for a delay and should be counted against the State because the "ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *See Zamorano*, 84 S.W.3d at 649; *Shaw*, 117 S.W.3d at 890; *see also Barker*, 407 U.S at 538 (White, J., concurring) (observing that "unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn," as that approach would "subvert[] the State's own goals in seeking to enforce its criminal laws"). We therefore conclude this factor weighs against the State.

---

[6] The record in this appeal does not include the transcript of the punishment phase of the possession trial, but again, the prosecutor who made the representation is the same prosecutor who participated in the possession trial. *See Gonzales*, 435 S.W.3d at 811.

In considering the weight to assign this factor, we note the trial court did not find any deliberate attempt on the part of the State to prejudice Moreno's defense, concluding instead that the State "simply failed to prosecute this case." The record supports this conclusion. Once the State secured its conviction on the possession charge and that conviction became final after appeal, prosecuting the assault charge was not a priority for the State for more than three years, until it learned that Moreno had been released on parole. While the State's delay may not have been a deliberate effort to impair Moreno's defense, and instead reflects only that the State was unconcerned with prosecuting the assault charge while Moreno was incarcerated, it is a less neutral reason than mere negligence or administrative delay. *See Balderas*, 517 S.W.3d at 768 (noting that more neutral reasons for delay, such as negligence or crowded dockets, weigh "less heavily" against State); *see also Doggett*, 505 U.S. at 657 (instructing that "the weight [courts] assign to official negligence compounds over time as the presumption of evidentiary prejudice grows," and that "toleration of such negligence varies inversely with its protractedness"). We will weight this factor accordingly.

### 3. *Defendant's assertion of his speedy trial right*

Although the defendant has no duty to bring himself to trial because that is the State's duty, the defendant does bear the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 281–82. The defendant's assertion of his speedy

trial right "is entitled to strong evidentiary weight in determining whether the defendant has been deprived of that right." *Balderas*, 517 S.W.3d at 771. A defendant's failure to timely demand a speedy trial strongly indicates that he does not really want a speedy trial. *Id.*; *Dragoo*, 96 S.W.3d at 314 (noting defendant's failure to assert speedy trial right does not amount to waiver of that right but makes it difficult to prove defendant was denied speedy trial). "The longer the delay becomes, the more likely a defendant who wished a speedy trial would be to take some action to obtain it." *Balderas*, 517 S.W.3d at 771 (quotation omitted); *see also Barker*, 407 U.S. at 531 ("The more serious the deprivation, the more likely a defendant is to complain."). As a result, "inaction weighs more heavily against a violation the longer the delay becomes." *Balderas*, 517 S.W.3d at 771.

In addition, seeking dismissal of a charge instead of a speedy trial generally weakens a speedy trial claim because it shows a desire to have no trial instead of a speedy trial. *Cantu*, 253 S.W.3d at 283. If a defendant does not seek a speedy trial before seeking dismissal of the charges, "he should provide cogent reasons for this failure." *Id.* "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*; *Porter v. State*, 540 S.W.3d 178, 182 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Here, Moreno did not assert his right to a speedy trial until July 2019, when he moved to set aside the indictment. This was more than seven years after he was indicted and more than five years after his trial on the possession charge. In this motion, Moreno did not demand that the State bring him to trial; instead, he sought dismissal of the indictment.

In its findings and conclusions, the trial court stated that it was "unreasonable to conclude that [Moreno] should have known to file a motion for a speedy trial given his long history of mental [infirmities] that were acute enough to warrant a jury trial on his competency (even though the jury found him to be competent to stand trial)." The trial court noted that while Moreno's failure to file a motion for a speedy trial "is not a legal excuse," Moreno also does not have a duty to bring himself to trial; instead, that is the State's duty.

While the record establishes that there have been questions surrounding Moreno's competency and that he has other mental health concerns, such as issues with anxiety, the record also establishes that Moreno was represented by counsel during the period of delay. His second counsel began representing him in December 2013, shortly before his competency trial, and this attorney remained his counsel of record until January 10, 2019, when the trial court allowed counsel to withdraw. The trial court then appointed new counsel to represent Moreno on January 24, 2019, and, six months later, this counsel moved to dismiss the indictment against Moreno

21

in July 2019. This is, therefore, not a situation in which Moreno was acting pro se and was tasked with representing himself. *Cf. Ussery*, 596 S.W.3d at 287–88 (noting defendants generally are not entitled to hybrid representation and that when defendant who is represented by counsel files pro se speedy trial motion, trial court is not required to consider motion).

The record contains no indication that Moreno asserted his speedy trial right before his appointed counsel moved to set aside the indictment. Instead, the record demonstrates that on the same date the trial court appointed new counsel for Moreno—January 24, 2019—it issued a scheduling order that set the case for a jury trial on August 19, 2019. Both Moreno and his new counsel signed this scheduling order. Then, six months later and one month before the trial setting, Moreno moved to set aside the indictment. In this motion, Moreno sought dismissal of the case with prejudice; he did not demand a speedy trial.

The trial court concluded that this factor was "neutral" and did not favor the State or Moreno. We disagree and conclude that Moreno did not timely assert his speedy trial right. When he did assert his speedy trial right, more than seven years after his indictment and one month before a jury trial setting, he sought dismissal and not a trial, indicating that he did not really want a trial. *See Balderas*, 517 S.W.3d at 771; *Cantu*, 253 S.W.3d at 283. We conclude that this factor weighs against Moreno. *See Dragoo*, 96 S.W.3d at 314–15 (considering fact that defendant "failed

to assert his speedy trial right for 3 1/2 years, until just before trial, although he was represented by counsel at all relevant times and no question is raised as to the competency of such counsel" in concluding factor "weighs very heavily against finding a violation of the speedy trial right").

### 4. *Prejudice to defendant*

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant." *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656). We evaluate the prejudice to the defendant considering the three interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the defendant; and (3) limiting the possibility that the defense will be impaired. *Balderas*, 517 S.W.3d at 772. "Of these types of prejudice, the last is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Cantu*, 253 S.W.3d at 285 (quoting *Dragoo*, 96 S.W.3d at 316). But a defendant's claim of a speedy trial violation "need not necessarily demonstrate prejudice to his ability to present defensive matters." *Zamorano*, 84 S.W.3d at 652. Courts have found prejudice in the *Barker* analysis based on interference with a single, other interest. *See, e.g.*, *id.* at 652–54 (concluding prejudice factor weighed in appellant's favor

even though "[t]he first and third interests [were] not strongly implicated" because "[t]he second clearly [was]").

In his motion to set aside the indictment, Moreno asserted the State's delay in bringing the assault charge to trial had interfered with all three of his protected interests. The trial court did not make any findings as to either the first or third interest—oppressive pretrial incarceration or impairment of the defense—but did find that the prejudice factor weighed in Moreno's favor based on his showing of anxiety relevant to the second interest. On appeal, the State argues the trial court erred in finding prejudice because the delay in bringing the assault charge to trial did not interfere with any of Moreno's protected interests. We disagree that none of the interests are affected here. As explained below, even if the first and third interests are not infringed, the second is.

In determining whether pretrial incarceration is oppressive, the dispositive consideration is the effect the incarceration has had on the defendant. *Smith v. State*, 436 S.W.3d 353, 367 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Here, Moreno was unable to make bail after his arrest in April 2012, and the trial court denied his motion for bail reduction. He was therefore subject to pretrial incarceration from the date of his arrest until June 2014, when he was sentenced for the possession conviction, at which point he was transferred to the TDCJ to begin serving his sentence. Moreno was incarcerated pursuant to his possession conviction

24

from June 2014 until some point in 2018, when he was released on parole. Moreno was briefly incarcerated in January 2019,[7] after the State resumed prosecution of the assault charge, but the trial court set his bail at $25,000 on January 24, 2019, and Moreno executed a surety bond that same day. Moreno was not incarcerated at the time of the hearing on his motion to set aside the indictment.

Although Moreno was subject to pretrial incarceration for this charge, as the State points out, a grand jury indicted him for the possession charge on the same date that it indicted him for the assault charge. Moreno was incarcerated while both charges were pending until June 2014, when he was convicted of the possession charge and transferred to the TDCJ. Moreno's pretrial incarceration was therefore not attributable solely to the delay that occurred in the underlying case.[8] Under the facts of this case, Moreno was not subjected to oppressive pretrial incarceration, and this interest is not implicated. *See Dragoo*, 96 S.W.3d at 315 (noting that, because defendant was incarcerated for murder during "most of the time" unlawful

---

[7] At the hearing on Moreno's motion to set aside the indictment, no testimony was presented concerning Moreno's incarceration after being released on parole, but defense counsel represented during argument that Moreno spent "a little over a week to ten days" in jail before he was able to post bond in January 2019.

[8] We note that the trial court found that Moreno's motion for bail reduction was denied in August 2012 and concluded that Moreno "is already under significant restraint due to being on parole until in or about 2045" for the possession offense. But the court made no other findings concerning whether Moreno was subject to oppressive pretrial incarceration for this offense.

possession of firearm charge was pending, main concern of prejudice inquiry was whether defendant's ability to defend himself was prejudiced by delay in trial of possession charge).

As to the third interest, limiting the possibility that the defense will be impaired,[9] courts have recognized that "[e]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Balderas*, 517 S.W.3d at 772. However, the State may rebut this presumption of prejudice. *See Gonzales*, 435 S.W.3d at 815 (concluding State failed to persuasively rebut presumption of prejudice arising after six-year delay between indictment and arrest of defendant, following which defendant quickly asserted his right to speedy trial); *State v. Wei*, 447 S.W.3d 549, 557 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Absent a showing that appellee acquiesced in the delay, it was the State's burden to rebut the presumption of prejudice because appellee was absolved from the requirement to demonstrate prejudice." (quotation omitted)). For example, the presumption of prejudice to a defendant's ability to defend himself is "extenuated" by the defendant's acquiescence in the delay. *Shaw*, 117 S.W.3d at 890 (quoting *Doggett*, 505 U.S. at 658); *Dragoo*, 96 S.W.3d at 315. Additionally,

---

[9]     The trial court concluded that the fourth *Barker* factor—prejudice to the defendant because of the delay—weighed in favor of Moreno but did not make any findings or conclusions concerning impairment to Moreno's defense caused by the delay.

26

conclusory assertions are not sufficient to carry a defendant's burden to demonstrate that he was prejudiced by delay. *Ussery*, 596 S.W.3d at 289.

Here, when Moreno moved to set aside the indictment in July 2019, the assault charge against him had been pending for more than seven years, longer than delays the Court of Criminal Appeals has found to be presumptively prejudicial to a defendant's ability to defend himself. *See, e.g.*, *Gonzales*, 435 S.W.3d at 815 (concluding that due to delay of six years between indictment and defendant's arrest, prejudice to defendant's ability to defend himself was presumed, and burden shifted to State to persuasively rebut presumption, which State was unable to do); *see also Doggett*, 505 U.S. at 657–58 (concluding that defendant was entitled to relief on speedy trial claim because presumption of prejudice arising from eight and one-half year delay between indictment and arrest was "neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted" (citations omitted)). The burden therefore shifted to the State to rebut the presumption of prejudice.

At the hearing on Moreno's motion to set aside the indictment, the State argued that the prejudice analysis in this case was unique because, in prosecuting the possession charge in 2014, the State put on evidence concerning the assault charge during the punishment phase. According to the State, because sworn testimony concerning the underlying charge has already been taken and can therefore be used to refresh a witness's memory or for impeachment, any concern about impairment

27

of the defense due to fading witness memories has been ameliorated. The record does not allow that conclusion.

The record in this appeal does not contain any material from the punishment phase of the possession trial. We thus do not know who or how many witnesses testified about the alleged assault, what they said, whether a full cross-examination of the witnesses was permitted, or whether the evidence was meaningfully scrutinized or the subject of any objection.[10] The trial court, having presided at both the possession trial and at the hearing on Moreno's motion to set aside the indictment, apparently was unpersuaded that the assault-related evidence was sufficiently preserved to ameliorate any prejudice resulting from the delay in bringing the assault charge to trial, and it made no findings to that effect. We will not imply them, as doing so would require fact findings that are contrary to the trial court's ultimate ruling rather than supportive of it. *See Zamorano*, 84 S.W.3d at 648 (instructing all evidence must be viewed in light most favorable to trial court's ruling). We must still consider that Moreno's delay in asserting his right to a speedy trial had some extenuating effect on any presumption of prejudice arising from the

---

[10]     Adding to this concern is defense counsel's statement based on personal knowledge that Moreno was no longer able to assist in his own defense. Counsel stated: "[Moreno's] ability to remember back then to assist me in defending [the assault] case, we just can't get there."

28

length of the delay. *See Dragoo*, 96 S.W.3d at 315 (stating presumptive prejudice is "extenuated . . . by the defendant's acquiescence" in delay).

But this is not a case in which Moreno's speedy trial claim depends on a presumption of prejudice because the evidence supports his showing of anxiety relevant to his second protected interest. That is, even if a presumption of prejudice is weakened under the third protected interest and the first protected interest is not implicated, for reasons already stated, the prejudice factor may still weigh in Moreno's favor. *See Zamorano*, 84 S.W.3d at 652–54. Moreno was not required to demonstrate prejudice implicating *all three* of his protected interests. *See, e.g.*, *id.* ("Although the last type of prejudice is the most serious, a defendant's claim of a speedy trial violation need not necessarily demonstrate prejudice to his ability to present defensive matters."); *see also Barker*, 407 U.S. at 533 ("[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."). And it is the second interest the speedy trial right is designed to protect—minimizing the anxiety and concern of the defendant—that is implicated most strongly here.

"[G]eneral anxiety is at least some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong of *Barker*." *Cantu*, 253 S.W.3d at 285–86 (quotation omitted). However, although evidence of generalized anxiety is relevant, it is not sufficient proof of prejudice under *Barker* "when it is no greater

29

anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Id.* at 286; *Smith*, 436 S.W.3d at 367–68.

Here, Franklin, the director of the men's recovery center in Bryan, testified that he has known Moreno since he was released on parole in 2018. Moreno was initially a client at the center, but he has since graduated and now works as an intern with the program. Moreno confides in Franklin, through daily interactions, and Franklin is familiar with Moreno's mental health issues. When asked whether Moreno had confided in him "regarding the reason [the parties were] in court today [on the speedy trial motion]," Franklin answered: "Yes, it's very hard on him and he loses sleep." In addition to his trouble sleeping, Moreno "worries a lot" and sometimes becomes paranoid. Franklin also testified that he was familiar with treatments that Moreno was "undergoing due to anxiety and concern about the [assault] case." More specifically, Franklin testified that he drives Moreno to a facility in Bryan once a month to receive an injection to help manage his anxiety. Franklin agreed that Moreno is worried about his future and the fact that he could go back to prison, and he acknowledged that Moreno is on parole for at least 20 more years and that engaging in drug use or committing new offenses could send him back to prison. Franklin also agreed that Moreno could also be worried about being sent back to prison due to a parole violation "separate and aside from this case."

The State does not contest whether Moreno suffered from anxiety, only its attribution to the delay of the assault trial and not to a more generalized fear of returning to prison. According to the State, absent evidence tying Moreno's anxiety exclusively to the assault trial's delay, Moreno cannot satisfy the prejudice inquiry. Essentially, the State asks us to conclude that Moreno's fear of incarceration is not relevant to the prejudice inquiry. We disagree.

On this point, we find the Court of Criminal Appeals' discussion in *Zamorano* instructive. *See* 84 S.W.3d at 652–54. In *Zamorano*, the appellant testified that the case pending against him had caused him "a lot of desperation" and that he was worried about what was going to happen every time he attended court. *Id.* at 653. The appellant also testified that he lost income when he was required to appear in court, an additional circumstance we acknowledge is not at issue here. The court of appeals in *Zamorano*—relying on the fact that "the only evidence [appellant] offered to demonstrate his anxiety was his testimony"—found that appellant's testimony was "too little and too late to support a showing of prejudice." *Id.* The court of appeals said: "[G]iven [appellant's] failure to pursue a motion for speedy trial for over two and one-half years, we infer that the main source of his anxiety was his fear of conviction, which is not a proper consideration." *Id.* at 653–54. The Court of Criminal Appeals rejected the inference drawn by the court of appeals. As to the evidence of the appellant's anxiety, the Court reasoned:

31

It is true that the only evidence appellant offered to demonstrate his anxiety was his own testimony. However, because the State did not challenge appellant's testimony, it is at least some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong of *Barker*. The court of appeals dismissed the main source of appellant's anxiety as his 'fear of conviction.' Even assuming that the court of appeals correctly characterized the source of appellant's anxiety, the sword of Damocles weighs no less merely because the source of anxiety is appellant's fear of conviction and the resultant as-yet-unknown punishment.

*Id.* at 654. The Court concluded that the "length of delay itself supports an inference of actual prejudice," as did the testimony of the economic costs and disruptions to appellant's employment. *Id.*

Considering this authority and viewing the evidence in the light most favorable to the trial court's ultimate ruling, as required by the standard of review, we agree with the trial court that Franklin's testimony was some evidence that the delay in bringing Moreno to trial on the assault charge has caused him anxiety, which is a relevant consideration in whether he has been prejudiced by the delay. *See id.*; *see also Balderas*, 517 S.W.3d at 773. The trial court described the severity of Moreno's anxiety as "great," and expressly found Franklin's testimony regarding Moreno's anxiety was credible "because it [was] corroborated by [Moreno's] long history of mental [infirmities] . . . acute enough to warrant a jury trial on his competency." From Franklin's testimony, the trial court could reasonably infer that Moreno suffered anxiety "beyond the level normally associated with a criminal charge." *See Cantu*, 253 S.W.3d at 286 ("[E]vidence of generalized anxiety, though

32

relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation.") Indeed, the trial court was best positioned to determine the source and severity of Moreno's anxiety given its familiarity with Moreno's mental health gained through the competency proceedings. *See Kelly*, 163 S.W.3d at 726–27. This factor thus weighs in favor of Moreno regardless of whether Moreno's other interests are not strongly implicated.

### 5. *Balancing the Barker factors*

"Dismissal of the charging instrument with prejudice is mandated only upon a finding that an accused's Sixth Amendment speedy-trial right was actually violated." *Cantu*, 253 S.W.3d at 281. Dismissal of the charges against a defendant is a "radical remedy," and therefore we must apply the *Barker* balancing test "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.*; *Ussery*, 596 S.W.3d at 291.

Undoubtedly, this is a close case. But giving appropriate deference to the trial court, three of the four *Barker* factors weigh in favor of granting Moreno relief. Weighing in favor of finding a violation of Moreno's speedy trial right is the fact that the delay here was excessive, more than seven years from the date Moreno was indicted to the date he moved to set aside the indictment. The first two years of delay

was justified, and we attribute no fault to either the State or Moreno for that period; however, more than four years of the subsequent delay was caused by the State's failure to pursue prosecution of the assault charge while Moreno was incarcerated on another charge. The length of delay thus weighs against the State, and not lightly.

In addition, Moreno presented evidence that he was prejudiced because he suffers anxiety attributable to the delay, which evidence the trial court determined was credible based in part on its own familiarity with Moreno's "long history" of "acute" "mental infirm[ities]." The State contends the evidence of prejudice was minimal. But "[c]ondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." *Zamorano*, 84 S.W.3d at 655 (quoting *Doggett*, 505 U.S. at 657); *see also Doggett*, 505 U.S. at 657 ("The Government . . . can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it."). The prosecution of the assault charge against Moreno may have been of little moment to the State until it learned by "chance" that he had been released on parole, but the record supports that it mattered greatly to Moreno.

What makes this case close is Moreno's tardy assertion of his right to a speedy trial. *See, e.g.*, *Dragoo*, 96 S.W.3d at 314 (defendant's failure to assert right makes it difficult to prove denial of speedy trial). Moreno did not assert his speedy trial right until more than seven years had passed from when he was indicted, and when he did assert that right, he moved for dismissal of the indictment—not for a speedy trial—one month before a jury trial setting. Had Moreno asserted the right sooner, all four factors would weigh in his favor. But his belated filing of a motion to set aside the indictment means this factor must weigh against him. *See id.* at 314–15 (defendant "quietly acquiesced" to delay by failing to timely assert speedy trial violation). Controlling decisions instruct that this factor is entitled to "strong evidentiary weight in determining whether the defendant is being deprived of the right [to a speedy trial]." *Gonzales*, 453 S.W.3d at 810 (quoting *Barker*, 407 U.S. at 531–32); *see also Cantu*, 253 S.W.3d at 283 ("[T]he defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). But controlling decisions also emphasize the need to appraise all the relevant circumstances and, specifically, the four factors herein considered, only one of which is the defendant's assertion of the right. *See Barker*, 407 U.S. at 533 (factors are related and must be considered

together with such other circumstances as may be relevant). If this third factor, could by itself defeat Moreno's claim, it would not be aptly described as merely one of four factors to be weighed together. *See id.*

Keeping in mind the inverse relationship between the State's culpability and the defendant's burden in the *Barker* analysis, *see Cantu*, 253 S.W.3d at 280–81, we conclude that (1) Moreno's burden to assert the right to a speedy trial and show prejudice was lessened by the weight of the first two factors against the State, and (2) the balance of the *Barker* factors supports a conclusion that Moreno was denied his constitutional right to a speedy trial. We therefore hold the trial court did not err in granting Moreno's motion to set aside the indictment.

We overrule the State's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Amparo Guerra
Justice

Panel consists of Justices Kelly, Guerra, and Farris.

Publish. TEX. R. APP. P. 47.2(b).