# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00631-CR

---

**Chase Daniel Laird, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2016-302, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## O P I N I O N

Appellant Chase Daniel Laird was convicted by a jury of trafficking a child and sexual assault of a child and sentenced to sixty years' and twenty years' confinement, respectively. *See* Tex. Penal Code §§ 20A.02(a)(7), 22.011(a)(2). The trial court ordered that the sentences run concurrently. On appeal, Laird contends that the anti-trafficking statute is unconstitutionally overbroad and vague and that his right to a speedy trial was violated. We will affirm the trial court's judgments of conviction.

## BACKGROUND[1]

In January 2016, Laird, then 24 years old, met Suzie Marie[2] on a dating app, and the two soon began messaging on Facebook. Although Marie was 14 years old at the time, her friend—who created Marie's profile—gave her age as 19. At Laird's request, Marie sent him 15 photographs, some of which depicted her naked breasts and genitalia.

Laird messaged Marie again in mid-February, pressuring her to meet him for sex and threatening to "post[ the photographs] somewhere" if she refused. Despite her repeated insistence that she was in fact 14, he told her to "stop playing the age card" and accused her of claiming that she was "19[,] then 16, then 15 and now 14." He messaged that if she were to have sex with him, he would allow her to delete the photographs from his phone.

On February 18th, he went to a bowling alley in New Braunfels where she was competing in a youth league. He led her to his SUV, drove her a short distance to a residential area, and had sex with her in the back of the vehicle. On returning to the bowling alley, she called her mother and told her that she had "met up with and had sex with a grown man."[3]

Marie was examined by a sexual assault nurse examiner (SANE), and swabs were taken from her vagina; DNA from semen on the swabs was later determined to be consistent with

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, .4.

[2] Because the complainant was a minor at the time of the offense, we will refer to her by the pseudonym assigned to her at trial. *See id.* 9.10(a)(3).

[3] At trial, Marie testified that the version of events that she told her mother was "[n]ot quite" the same as the version she had told the jury. She also testified that when law enforcement first responded, she told them that she had been abducted by an unknown assailant because she did not want to "get in trouble."

Laird's DNA profile. On March 17th, he emailed her from his Texas State account, apologizing for the quality of the sex and asking if they could have sex again.

He was indicted with trafficking a child (count I), sexual assault of a child (count II), and sexual performance by a child (count III). Following a trial—at which he testified and admitted to having had sex with Marie, who he knew was a minor—he was convicted by a jury on all three counts. The jury sentenced him to sixty years' confinement for count I, twenty years' confinement for count II, and twenty years' confinement for count III. Because of double-jeopardy concerns, the trial court vacated the conviction for count III and dismissed the charge. The court also ordered that the remaining sentences run concurrently. This appeal followed.

## DISCUSSION

### I. Constitutional Challenges to Section 20A.02(a)(7)

In his first two issues, Laird contends that the anti-trafficking statute under which he was convicted, Section 20A.02(a)(7) of the Texas Penal Code, is unconstitutionally overbroad and vague. *See* Tex. Penal Code § 20A.02(a)(7). Specifically, he asserts that the statute encroaches on "young people's" First Amendment rights to intimate association and marriage, that it fails to provide adequate notice of what conduct it proscribes, and that it vests prosecutors "with impermissible power and no guiding standards."

Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)). If an issue has not been preserved for appeal, we should not address the merits of that issue. *Id.* To preserve a complaint for appellate review, there must ordinarily be a

timely, specific objection and a ruling by the trial court. Tex. R. App. P. 33.1(a). "To be timely, a complaint must be made as soon as the grounds for complaint [are] apparent or should be apparent." *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999). To be sufficiently specific, an objection need not employ "hypertechnical or formalistic . . . words or phrases," *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018); "magic words," *Ford*, 305 S.W.3d at 533; or a citation to a particular statute, *Laws v. State*, 640 S.W.3d 227, 229 (Tex. Crim. App. 2022) (quoting *Ford*, 305 S.W.3d at 533). Rather, the objecting party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). "This gives the trial judge and the opposing party an opportunity to correct the error." *Pena*, 285 S.W.3d at 464 (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)).

An appellant may claim that a statute is unconstitutional "on its face" or "as applied." A claim that a statute is facially unconstitutional is a claim "that the statute, by its terms, always operates unconstitutionally." *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.2 (Tex. Crim. App. 2006) (citing *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 n.5 (Tex. 1997)); *see McGruder v. State*, 483 S.W.3d 880, 883 (Tex. Crim. App. 2016) (noting that facial challenge "is an attack on the statute itself"). In contrast, an as-applied challenge claims "that the statute, although generally constitutional, operates unconstitutionally as to the claimant because of his particular circumstances." *Gillenwaters*, 205 S.W.3d at 537 n.3 (citing *Lewellen*, 952 S.W.2d at 461 n.5).

Although we understand Laird to contend that Section 20A.02(a)(7) is unconstitutional on its face, the nature of his constitutional challenges is irrelevant for purposes of our analysis. The Court of Criminal Appeals has held that both facial and as-applied challenges must be raised before the trial court, or they are waived.[4] *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (concluding that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute"); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (holding that as-applied constitutional challenges were not preserved for appellate review because no specific, timely objections were made at trial); *see also Estrada v. State*, 313 S.W.3d 274, 309 (Tex. Crim. App. 2010); *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008); *Coggin v. State*, 123 S.W.3d 82, 89 (Tex. App.—Austin 2003, pet. ref'd).

As the State observes, Laird did not raise any challenge to the constitutionality of Section 20A.02(a)(7) in the trial court and did not specifically object that the statute was vague or overbroad; thus, he has failed to preserve either of his issues for our review. *See* Tex. R. App. P. 33.1 (a); *Karenev*, 281 S.W.3d at 434; *Curry*, 910 S.W.2d at 496; *Robisheaux v. State*, 483 S.W.3d 205, 214–15 (Tex. App.—Austin 2016, pet. ref'd) (rejecting facial challenge to constitutionality of statute and concluding that it did not violate prohibition against ex post facto laws); *see also Martin v. State*, 635 S.W.3d 672, 676 n.4 (Tex. Crim. App. 2021) ("Appellant also challenged the constitutionality of this statutory framework, both facially and as applied to

---

[4] An exception exists where the challenged statute has previously been held unconstitutional; in such cases, it is "void ab initio," and there is no valid law upon which to base the conviction. *See Ex parte Beck*, 541 S.W.3d 846, 856 (Tex. Crim. App. 2017); *Smith v. State*, 463 S.W.3d 890, 896–97 (Tex. Crim. App. 2015); *Ex parte Moy*, 523 S.W.3d 830, 834 n.4 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Because Section 20A.02(a)(7) has not been held unconstitutional, the exception is inapplicable in the present case. *See Moy*, 523 S.W.3d at 834 n.4.

him.  Because those grounds were not preserved for appellate review because Appellant did not raise any such challenges at the trial court level, the court of appeals overruled those grounds.").  We overrule his first and second issues.

## II.    Speedy-Trial Right Violation

In his third issue, Laird contends that his right to a speedy trial was violated under the balancing framework articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The Supreme Court in *Barker* listed four factors that a court should consider in addressing a speedy trial claim:  (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay.  *Id.*; *see Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016); *Sample v. State*, 653 S.W.3d 287, 291 (Tex. App.—Austin 2022, pet. ref'd).  The State bears the burden of justifying the length of the delay, while the defendant has the burden of proving his assertion of the right to a speedy trial and of showing prejudice.  *State v. Davis*, 549 S.W.3d 688, 697 (Tex. App.—Austin 2017, no pet.) (citing *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008)).  The defendant's burden of proof on the third and fourth factors "'varies inversely' with the State's degree of culpability for the delay."  *Cantu*, 253 S.W.3d at 280.  Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial.  *Id.* at 280–81.  None of the factors is a necessary or sufficient condition of finding a speedy-trial-right deprivation.  *Barker*, 407 U.S. at 533.  They are instead "related factors and must be considered together with such other circumstances as may be relevant."  *Id.*  Because the

factors have no "talismanic qualities," courts must "still engage in a difficult and sensitive balancing process." *Id.*

We have previously discussed the two-phase standard for reviewing a trial court's ruling on a speedy-trial claim:

> [W]e review factual components for an abuse of discretion and legal components de novo. *Cantu*, 253 S.W.3d at 282. Review of the four factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question. *Id.* An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court when it ruled. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (citing *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003)). We defer to a trial court's resolution of disputed facts and reasonable inferences from those facts. *Cantu*, 253 S.W.3d at 282.

*Sample*, 653 S.W.3d at 292.

In assessing evidence at a speedy-trial hearing, a trial judge may "completely disregard" even uncontroverted testimony if there is a "reasonable and articulable basis for doing so." *Cantu*, 253 S.W.3d at 282. A reviewing court must view all evidence in the light most favorable to the trial judge's ultimate ruling. *Id.*

A. **Length of Delay**

The length of delay is measured from an accusation against a defendant—the earlier of the defendant's arrest or the presentment of an indictment or information against him—to the date of trial. *See Shaw*, 117 S.W.3d at 889; *State v. Manley*, 220 S.W.3d 116, 122 (Tex. App.—Waco 2007, no pet.). It is to some extent a "triggering mechanism," *Shaw*, 117 S.W.3d at 889, which requires that a defendant make a "threshold showing that the interval between accusation and trial is 'presumptively prejudicial'" to necessitate that a court consider the

7

remaining factors and weigh them, *Balderas*, 517 S.W.3d at 767. "Presumptive prejudice" is simply the burden to trigger a full inquiry; it "does not necessarily indicate a statistical probability of prejudice." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Generally, delay approaching one year is sufficient. *Id.*; *cf. Cantu*, 253 S.W.3d at 281 ("[W]e have held that a delay of four months is not sufficient while a seventeen-month delay is."); *Hopper v. State*, 495 S.W.3d 468, 474 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017) ("Generally, a delay of eight months or longer is sufficient to cross that threshold.").

Laird was arrested on March 22, 2016, and indicted on April 27, 2016. His trial began on November 1, 2021. Accordingly, the delay in this case was approximately five-and-a-half years. Because the delay stretched far beyond the minimum needed to trigger the additional inquiry, this factor weighs heavily in favor of finding a speedy-trial-right violation. *See Balderas*, 517 S.W.3d at 768 (eight-year delay); *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (nearly-four-year delay); *Dragoo*, 96 S.W.3d at 314 (three-and-a-half year delay); *see also Barker*, 407 U.S. at 533 (describing delay of "well over five years" as "extraordinary").

## B.      Reason for Delay

The Supreme Court in *Barker* listed three categories of delay that a reviewing court must weigh when conducting a speedy-trial analysis. *See Barker*, 407 U.S. at 531. A deliberate attempt to "hamper the defense" weighs heavily against the State. *Id.*; *Balderas*, 517 S.W.3d at 768 (citing *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)). Neutral reasons, "such as negligence or overcrowded courts," weigh less heavily but must still be considered "since the

8

ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. Finally, valid reasons, such as a missing witness, "should serve to justify appropriate delay," *id.*, and do not count toward the length of delay, *Gonzales v. State*, 435 S.W.3d 801, 810 (Tex. Crim. App. 2014). Delay caused by the defendant or his counsel, conversely, weighs against the defendant. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017) (citing *Brillon*, 556 U.S. at 90); *Balderas*, 517 S.W.3d at 768. If the record does not provide a reason for a delay, a court may not presume that the delay was due to a "valid reason" or to the State's bad faith. *Dragoo*, 96 S.W.3d at 314.

Although Laird was arrested on March 22, 2016, the first three months following his arrest are not counted against the State because it is entitled "to a reasonable period in which to prepare its case." *See Shaw*, 117 S.W.3d at 889–90. Much of the ensuing delay was caused by Laird's frustration with his appointed attorneys, his persistent attempts to "fire" them, the appointment of new counsel, and the new attorneys' need to review the case. *See Wells v. State*, 319 S.W.3d 82, 89 (Tex. App.—San Antonio 2010, pet. ref'd) (finding that "a substantial portion of the [20-month] delay was attributable to [defendant]" because, "[b]ut for [defendant]'s complaints against two of his attorneys and a subsequent motion to withdraw by his first attorney, there would have been no need for additional time to allow [defendant]'s new attorneys to prepare"). As a result of Laird's complaints, three of his lawyers moved to withdraw and were replaced by substitute counsel; Laird had expressed dissatisfaction with his fourth appointed attorney by the time trial began.[5]

---

[5] Laird's first attorney withdrew on October 11, 2016. His fourth attorney, who represented Laird at trial, was appointed on September 9, 2019.

Further delay not attributable to the State was occasioned by concerns about his competency. *See State v. Lopez*, 631 S.W.3d 107, 112 (Tex. Crim. App. 2021) ("Our caselaw is clear that delays related to competency evaluations do not count against the State." (citing *Hull v. State*, 699 S.W.2d 220, 221–22 (Tex. Crim. App. 1985) (en banc))); *Wilsford v. State*, No. 03-19-00419-CR, 2020 WL 4462325, at *9 & n.11 (Tex. App.—Austin July 24, 2020, no pet.) (mem. op., not designated for publication) (excluding from length-of-delay calculation delay attributable to defendant, including for competency evaluation). In his motion to withdraw filed on October 11, 2016, Laird's first lawyer requested that Laird's competency be evaluated. He was found by the trial court to be incompetent to stand trial on March 1, 2017, and his competency was restored on April 16, 2018. At the request of his third attorney, a second competency evaluation was ordered by the trial court on April 9, 2019, and Laird was found to be competent again in June 2019.

Delay also resulted from defense attorneys' motions for continuance. *See Shaw*, 117 S.W.3d at 889 ("[G]iven defense counsel's statements to the trial court regarding [defendant]'s motions for continuance, the trial court could have reasonably concluded that [defendant] himself was responsible for several months of the delay."); *Randle v. State*, 826 S.W.2d 943, 945 (Tex. Crim. App. 1992) ("[H]ad [defendant] requested the continuance or the postponement, he may have waived his right to complain of ensuing trial delays." (citing *Courtney v. State*, 472 S.W.2d 151, 153 (Tex. Crim. App. 1971))). Laird's attorneys filed three motions for continuance: on July 27, 2018; February 2, 2020; and October 5, 2020. Among their reasons for requesting more time were the need to prepare and to pursue "several avenues of defense," Laird's incarceration in Waco, his "special circumstances," and a planned vacation and move. Although he stresses that the third motion was predicated on the State's purported

10

failure to bring subpoenaed records to a hearing on February 18, 2020, the referenced subpoena, which counsel stated was filed on February 10, 2020, is not included in the record before this Court. Moreover, even were counsel's assertion correct, the attorney who filed the motion for continuance appears to have waited eight months to do so.

The record reflects that the remaining significant source of delay was the COVID-19 pandemic. As Laird recognized during his testimony at the hearing on the speedy-trial motion, jury trials were suspended in Comal County from March 2020 to October 2021.[6] To the extent that the pandemic and related court closures weigh against the State, they do so but slightly. *See Salazar v. State*, No. 04-22-00704-CR, 2023 WL 7553596, at *2 (Tex. App.—San Antonio Nov. 15, 2023, no pet. h.) (mem. op., not designated for publication) ("While the delays caused by the pandemic may weigh against the State, they do not weigh heavily."); *State v. Voss*, No. 07-23-00235-CR, 2023 WL 7395417, at *3 (Tex. App.—Amarillo Nov. 8, 2023, pet. filed) (mem. op., not designated for publication) ("Although the State did not act in bad faith, as the government entity responsible for prosecuting [defendant], we find the delay demonstrated by the record weighs against the State."); *Reynolds v. State*, No. 12-22-00007-CR, 2023 WL 2802260, at *2 (Tex. App.—Tyler Apr. 5, 2023, no pet.) (mem. op., not designated for publication) ("We conclude that this period of delay due to a global pandemic should not be weighed against either party."); *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.) ("Delay caused by the onset of a pandemic cannot be attributed as fault to the State.").

Thus, because the delay in this case was either attributable to Laird—his incompetency, constant changes in counsel, and motions for continuance—or weighed at most

---

[6] Laird does not dispute these dates on appeal.

11

only slightly against the State, we find that this factor weighs heavily against finding a speedy-trial violation. *See Hopper*, 520 S.W.3d at 924; *Rivera v. State*, 990 S.W.2d 882, 890 (Tex. App.—Austin 1999, pet. ref'd) ("Delay which is attributable *in whole or in part* to the defendant may constitute a waiver of a speedy trial claim." (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999))); *Prescott v. State*, 123 S.W.3d 506, 516 (Tex. App.—San Antonio 2003, no pet.) ("In this case, part of the delay was caused by [defendant]'s attorney's continuances, announcements of not ready, and failures to appear. Therefore, [defendant] was not deprived of her right to a speedy trial.").

### C. Assertion of Right

When a defendant does not timely demand a speedy trial, it "indicates strongly that he did not really want one." *Balderas*, 517 S.W.3d at 771 (citing *Dragoo*, 96 S.W.3d at 314); *see Dragoo*, 96 S.W.3d at 315 (finding 3.5-year delay in which defendant "quietly acquiesced" weighed "very heavily" against finding speedy-trial violation); *State v. Davis*, 549 S.W.3d 688, 704 (Tex. App.—Austin 2017, no pet.). Repeated requests for a speedy trial weigh heavily in favor of a defendant, "while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008). Moreover, although filing for dismissal of the charges instead of a speedy trial does not necessarily waive a speedy-trial claim, *see Davis*, 549 S.W.3d at 704, doing so "will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one," *Cantu*, 253 S.W.3d at 283 (citing *Zamorano*, 84 S.W.3d at 651 n.40); *see Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) (noting that "[i]n some cases, defense counsel may legitimately feel that a long delay has caused

12

a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly"). Where a defendant seeks dismissal before seeking a speedy trial, he "should provide cogent reasons" for doing so. *Cantu*, 253 S.W.3d at 283. Lastly, while a lengthy delay reduces defendants' burden to show prejudice, it "increases their burden to show that they timely asserted the right." *Sample*, 653 S.W.3d at 291.

Laird first invoked his right to a speedy trial in a series of March 22, 2019 letters to State and trial court personnel, including the trial judge, in which he stated that the District Attorney and Laird's defense lawyers had "deliberately ignored [his] right to a fair and speedy trial." He requested that the trial judge "either quash the indictment and have the charges dismissed, on summary judgment, or force [his] case to trial." The same day, he moved for "summary judgment" on the basis that there was no evidence of his guilt, an assertion he claimed was supported by "the continued postponement of a trial."

In December 2019, he began attempting to file monthly pro se motions for speedy trial, requesting that his case be tried or that the charges against him be dismissed. During the speedy-trial hearing, he testified that the December 2019 motion was his first "official speedy trial motion" and that he had since filed twenty such pro se motions in the trial court. His counsel filed a copy of Laird's motion with the court on September 22, 2021, and trial was set for November 1, 2021. On October 28, 2021, Laird requested that the trial court file a final pro se "Motion to Dismiss for Failure to Provide a Speedy Trial," abandoning his request for trial and asking that the court dismiss the charges against him.[7]

---

[7] The letter and motion were not filed until November 4, 2021, the date of Laird's convictions.

13

First, we must determine when Laird initially asserted his right to a speedy trial. Such an assertion "should be, at the very least, unambiguous." *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013). On appeal, he argues that he asserted the right in his September 1, 2016 letter informing the trial court that he had fired his attorney, Wayne Huff. Laird suggests that "the State was on advanced notice that [he] wanted to go to trial" because he stated in the letter that he had fired Huff over his professed belief that Laird could not win at trial.

Such a statement is hardly an unambiguous assertion of the right to a speedy trial. *Cf. id.* (determining that defendant's announcement that he was ready for trial was not demand for speedy trial but "merely assert[ed] that he could go to trial at that moment should the State push for it"). Indeed, in the same letter, Laird explained that he had "terminated" Huff because, "most importantly, [he] should have filed for the dismissal of [Laird's] case 6 months ago due to insufficient evidence." He also requested that the trial judge "review[ his] case for dismissal." Accordingly, we conclude that he did not assert his speedy-trial right in the September 2016 letter.

We turn next to the March 2019 letters—which explicitly referenced Laird's right to a speedy trial—and his numerous pro se motions for speedy trial. A trial court is "free to disregard any pro se motions presented by a defendant," such as Laird, "who is represented by counsel." *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). Moreover, "a motion for speedy trial "must be 'presented' to the trial court to preserve a complaint for appellate review, and presentment means more than mere filing." *Ussery v. State*, 596 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see Zamorano*, 84 S.W.3d at 652; *Guevara v. State*, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

Consequently, many of our sister courts have held that pro se filings such as Laird's are not assertions of the speedy-trial right under *Barker* absent evidence in the record that they were considered and ruled on by the trial court.[8] *See Ussery*, 596 S.W.3d at 288 (concluding that defendant's assertion of speedy-trial right in his pro se motions was ambiguous because motions "were not required to be considered by the trial court and it is unclear if, or when, those motions or other assertions of his right to speedy trial were presented to the trial court"); *Valles*, 2020 WL 255746, at *3 (declining to consider defendant's pro se submissions asserting speedy trial right, which were filed while he was represented by counsel); *Daniels v. State*, No. 04-18-00474-CR, 2019 WL 1139553, at *4 n.5 (Tex. App.—San Antonio Mar. 13, 2019, no pet.) (mem. op., not designated for publication) (holding that "[b]ecause [defendant] was represented by counsel when he filed his pro se motions, [reviewing court] cannot consider them for purposes of the *Barker* analysis"); *Jones v. State*, No. 02-08-00258-CR, 2010 WL 323577, at *5 n.3 (Tex. App.—Fort Worth Jan. 28, 2010, pet. ref'd) (mem. op., not designated for publication) (explaining that court of appeals "will not consider this pro se filing because [defendant] had appointed counsel at that time and because nothing suggests that the trial court considered this filing").

Because Laird's pro se motions were not ruled on, and there is no evidence in the record that the letters or motions were considered by the trial court, we cannot find that they amounted to an assertion of his right to a speedy trial under *Barker*. *See Davis*, 549 S.W.3d at 697 (recognizing that defendant bears burden of proof on assertion-of-right factor). Thus, he

---

[8] Although these decisions are not binding precedent, we find their reasoning to be persuasive.

asserted the right for the first time in the motion for speedy trial filed by his counsel on September 20, 2021—approximately five-and-a-half years after his arrest.[9]

Moreover, although Laird was persistent in filing pro se motions for speedy trial, it is significant that most of his filings requested in the alternative that his case be dismissed. *See Cantu*, 253 S.W.3d at 283. Several, such as those filed on May 13, 2020, and November 14, 2021, requested dismissal as the sole remedy. He also filed two pro se habeas applications requesting dismissal and a pro se motion for summary judgment, in which he argued that there was no evidence of his guilt.

For these reasons, we conclude that the record strongly indicates that Laird was not truly interested in a speedy trial; that he waited almost the full length of the delay to assert his right; and that, consequently, the third *Barker* factor weighs very heavily against finding a speedy-trial violation. *See id.*; *Balderas*, 517 S.W.3d at 771; *Dragoo*, 96 S.W.3d at 315.

### D.    Prejudice

The United States Supreme Court has identified three interests of the defendant that the speedy-trial right was meant to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Sample*, 653 S.W.3d at 292. The most serious is the last, including the unavailability of witnesses or loss of memory, because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Loss of memory, however, may not always be reflected in the record, *id.*; consequently, a defendant "has the burden to make *some showing* of prejudice, but a showing

---

[9] Even if Laird were to have asserted his right in the March 2019 letters, he would still have waited three years to do so.

16

of actual prejudice is not required," *Balderas*, 517 S.W.3d at 772 (emphasis added). "Evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Sample*, 653 S.W.3d at 292 (citing *Cantu*, 253 S.W.3d at 286).

Although "excessive delay presumptively compromises the reliability of a trial," presumptive prejudice alone—without regard to the other *Barker* factors—is insufficient to prove a speedy-trial violation. *Doggett*, 505 U.S. at 655–56. Moreover, such presumption "is extenuated by [a defendant's] longtime acquiescence in the delay," *Dragoo*, 96 S.W.3d at 315, and may be "even further extenuated by [the defendant's] failure to employ a remedy that would have guaranteed him a speedy trial," *Hopper*, 520 S.W.3d at 929. Indeed, "[d]elay is not an uncommon defense tactic" and "may work to the accused's advantage." *Barker*, 407 U.S. at 521. As the *Barker* Court explained: "As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof." *Id.*; *see Rivera*, 990 S.W.2d at 892 ("Time can damage either side's case, and it is often impossible to determine which side has been prejudiced more severely.").

During the speedy-trial hearing, Laird provided a lengthy explanation of his perceived prejudice, which he references on appeal:

> I've suffered excessive nightmares, high anxiety, anxiety, panic attacks. I've lost friends and disconnected with family. I have not had access to appropriate psychological therapy or medication and have even been committed for treatment to a mental hospital as a result of my extended incarceration.

17

I've lost everything I own from my vehicle down to my Social Security card and birth certificate. I have received letters from the dean of Texas State University threatening disciplinary action. I've been shunned by the members of my student organization and by other students elsewhere.

My reputation is ruined. I've experienced catastrophic levels of stress and fear due to the nature of my charges. I've had to endure years of solitary confinement and special housing for sexual predators or risk my safety in general population with violent inmates also because of my charges.

I have been the subject of discrimination, death threats and outright physical assaults also due to the nature of my charges.

I've suffered the continuous strain and chaos of being shipped to facilities all over Texas and being plunged into one hostile environment after another always fearing for my safety.

I've been forced to endure the entire COVID-19 pandemic behind bars. Not only has this pandemic caused further delay in trial, but I've lived in agony at the prospect that an outbreak would occur in such an entirely confined and densely populated facility.

Further, having disconnected with family, I worry daily about the condition of my seven-year-old daughter in the midst of – in the midst of this pandemic.

I've not been able to get a job to hire or pay outside counsel for effective representation. I've suffered restriction of movement, loss of opportunity and loss of employment opportunity as a result of over half a decade of continuous confinement.

Any outside support system that would have assisted in the preparation of my defense was effectively wiped out over the past five-plus years. This alone amounts to an extreme handicap to my ability to prepare my defense.

And what's – what's more, I lost years['] worth of records in April of 2018 while at the state hospital due to a urinating incident involving a mentally challenged patient. Not only were those lost documents vital in further proving a speedy trial violation, they were essential in preparing for trial. The loss of those records presents another severe blow to my ability to prepare my defense.

Further, I have dimming memory and lapse of memory to the point that I may not be able to honestly discuss certain crucial aspects of my case. I'm certain there are some technical details significant to the outcome of my case that I have forgotten altogether. The best I will be able to do is read my surviving notes, review any evidence and try to mount a defense based on that alone.

In addition to any – in addition to all of the aforementioned impairments, failing memory, my own and others', amounts to a significant impairment to my defense. This is especially given – so that the only tangible evidence is mine and others' memories.

Although exhaustive, Laird's explanation fails to distinguish between the consequences of delay and the more general drawbacks of criminal accusation and pretrial confinement. As he recognizes in the foregoing testimony, many of the purported harms he suffered—psychological distress, ostracism, being subjected to university disciplinary proceedings, loss of reputation, death threats and physical assaults, solitary confinement—resulted from the nature of the charges against him rather than the length of delay. *See Sample*, 653 S.W.3d at 295 ("[T]he evidence did not tie these harms to the delay rather than the nature of the charges against him."); *id.* ("[E]ven if a speedier trial had shortened the time the indecency charge was pending, it would not have avoided all of the negative effects to [defendant] of being charged with indecency with a child and sexual assault of an adult."); *see also Cantu*, 253 S.W.3d at 286 (requiring evidence of "greater anxiety or concern beyond the level normally associated with a criminal charge or investigation" to suffice as proof of prejudice factor under *Barker*). Others, such as his commitment and frequent changes in counsel, were attributable to him. *See Balderas*, 517 S.W.3d at 773 (concluding that "any prejudice to [defendant] was extenuated by his role in requesting the delay"); *Wilsford*, 2020 WL 4462325, at *11 (finding presumption of prejudice was minimized in part by defendant's "acquiescence to or involvement in most of the delay through agreed resets [and] his pattern of replacing his appointed counsel").

Still others are simply unsupported by the evidence. Neither at the hearing nor elsewhere did Laird elaborate on the "urinating incident," which was never referenced by his counsel and does not appear again in the record. Regardless, Laird appears to assert that the

incident occurred while he was incompetent and thus before a trial could have been held. And while he testified that the delay caused him to lose "everything [he] own[s]," including his vehicle, Social Security card, and birth certificate, he stated that those items had already been lost in a letter to a prospective attorney filed on December 4, 2018, months before he first mentioned his right to a speedy trial and years before he asserted the right.

Most importantly, Laird did not show that his ability to defend himself was affected. *See Balderas*, 517 S.W.3d at 772 (noting that of three considerations in prejudice determination, "the most important" is "limiting the possibility that the defense will be impaired"). As noted above, although he testified that he had lost "years[']s worth of records" that "were essential in preparing for trial" and the loss of which "present[ed a] severe blow to [his] ability to prepare [his] defense," he never explained what the records had contained or how his defense was impacted.

Any impairment to Laird's defense resulting from lost records or memory is likely to have been minimal given the overwhelming evidence of his guilt and his admission during his trial testimony that he committed the charged offenses. The evidence against him included the fact that his contact info and photographs were saved to Marie's phone; her call log showing that he called her on January 14, 2023, and January 23, 2023; Facebook messages in which he threatened to release nude photographs of her and in which she repeatedly told him that she was underage; footage from the bowling alley and H-E-B parking lot showing them meeting at the alley and walking toward his car; a Facebook message from the day after the assault in which he wrote, "That was a bad fuck, though, in the back of the car"; DNA evidence indicating that his sperm were recovered from her vaginal swab; and an email from his university account to her

20

entitled "one more time for redemption" in which he apologized for the quality of the sex, provided details of the encounter, and asked to have sex with her again.

Following the evidence's admission, Laird's counsel informed the trial court that Laird was "no longer contesting the issue," that he was "essentially going to come clean on the stand," and that a potential defense witness therefore did not need to be called.[10] During his testimony, Laird frequently equivocated and blamed his memory when pressed for inculpatory information. However, he testified that he drove Marie from the H-E-B parking lot to a residential area where they had sex, that he had decided to confess to spare her from having to take the stand again, that he had written the Facebook messages and email; that he had known she was 14 when he went to the bowling alley; that she had sent him compromising photographs; that she had told him that she was underage, but he had not believed her; that he had parked in the H-E-B lot because he "suspected she was a kid"; that he penetrated her vagina with his penis; and that he was not denying that his semen was found on her body. When asked by the State whether he was only confessing because it worked to his benefit, he testified that he "fought this as long as [he] could. [He] tried to win. [He] would expect [the jury] to do the same thing." After the State asked whether he was still trying to win "in a different way," he responded, "Isn't that what everybody does."

Although Laird is correct that Marie's memory was at times imperfect and that she could not remember who initiated contact on the dating app, what the first Facebook messages said, what happened immediately prior to the intercourse, why there were inconsistencies between her accounts of what happened, and what the first thing was that she

---

[10] Counsel also stated that, in any event, he was concerned that the witness' testimony would not be helpful and could be inculpatory.

asked him at the bowling alley, he does not explain how this testimony by the State's principal witness would have benefited his defense, which by the time of his closing argument amounted only to an insistence that his conduct was not intended by the Legislature to be prosecuted under the trafficking statute. Moreover, Marie testified without apparent hesitation that he had asked her for nude photographs, that she had told him that she was 14 before they had sex, that he coerced her into having sex with him through blackmail, that he drove her to a "random place" where they had vaginal intercourse, and that he had ejaculated in her vagina. Although defense counsel stated that she was "kind of hemming and hawing as to whether or not [Laird] actually penetrated" her and asked if it were possible that he had not, she testified that she was "positive" that he had.

After both sides rested, the trial judge denied the motion for speedy trial "based upon everything that [he had] heard." "[H]aving not heard anything that would indicate there's some defensive issue that would've been preserved had this trial gone on earlier," he continued, "[t]he balancing of *Barker v. Wingo* would dictate that the motion be denied and it is so denied."

Thus, although Laird has shown some evidence of prejudice with regard to disruption of employment and personal anxiety, *see Cantu*, 253 S.W.3d at 286, the showing is mitigated to a large degree by his having caused, or acquiesced in, much of the delay, *see Balderas*, 517 S.W.3d at 773; *Wilsford*, 2020 WL 4462325, at *11. Moreover, with respect to the "most important" consideration in the prejudice analysis, he has not shown that his defense was impacted. *Balderas*, 517 S.W.3d at 772. Accordingly, this factor is at most neutral.

22

### E. Balancing of *Barker* Factors

Having analyzed each of the *Barker* factors, we must next balance them. *Id.* at 773. The length of delay weighs heavily in favor of finding a speedy-trial violation. However, the delay in this case was caused almost entirely by the pandemic, for which we assign the State little fault, or by Laird's incompetency, changes in representation, and motions for continuance. The second factor therefore weighs heavily against finding a violation. Moreover, Laird waited over five years to assert his right to a speedy trial. While he filed frequent pro se motions for speedy trial, they sought dismissal as much as an actual trial, and both his first and last filings requested a dismissal alone. The third factor likewise weighs heavily against finding a speedy-trial violation. The fourth factor, prejudice, is neutral. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not err by denying the motion to dismiss. We overrule Laird's third issue.

### CONCLUSION

Having overruled each of Laird's issues, we affirm the trial court's judgments of conviction.

_____
Edward Smith, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   December 22, 2023

Publish

23